TODD J. ELIA-WARNKEN *vs*. RICHARD A. ELIA.

Worcester. April 5, 2012. - July 26, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Marriage. Comity. Statute,* Construction.

This court concluded that a civil union entered into in the State of Vermont must be dissolved before either party to that civil union can enter into a valid marriage in Massachusetts to a third party. [31-36]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on April 15, 2009.

A question of law was reported by *Ronald W. King, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nicholas J. Plante (Russell Schwartz* with him) for the plaintiff.

*Karen L. Loewy (Bennett H. Klein* with her) for the defendant.

*Hobart F. Popick,* for Susan B. Apel & others, amici curiae, submitted a brief.

IRELAND, C.J. We transferred this case from the Appeals Court to consider a question reported by a judge in the Probate and Family Court: "Whether or not a Vermont civil union must be dissolved before either party to that civil union can enter into a valid marriage in Massachusetts to a third party." The matter came before the judge in the course of divorce proceedings between the plaintiff and the defendant, a same-sex couple who had been married in Massachusetts but where the plaintiff had earlier entered into a civil union in Vermont. Because we recognize the plaintiff's Vermont civil union as the equivalent of marriage in the Commonwealth, we answer the reported question in the affirmative.[1]

---

[1]We acknowledge the amicus brief of Susan B. Apel & others, Vermont family law and estate planning attorneys.

*Facts.* The undisputed facts, as reported by the judge and contained in the record, are as follows. On April 19, 2003, the plaintiff, Todd J. Elia-Warnken, entered into a same-sex civil union in the State of Vermont. His Vermont civil union has never been dissolved by any civil authority.[2] Nevertheless, on October 17, 2005, the plaintiff and the defendant, Richard A. Elia, were married in Worcester.

In April, 2009, the plaintiff filed for divorce from the defendant. In his answer, filed on January 12, 2010, the defendant stated that he was married to the plaintiff and counterclaimed for a divorce. At some point, the defendant apparently discovered that the plaintiff had an undissolved civil union.[3] In March, 2010, the defendant moved to dismiss the complaint and counterclaim for divorce on the ground that his Massachusetts marriage was void.

*Background.* We set forth the relevant law concerning the rights of same-sex couples in Vermont and in the Commonwealth.

In 1999, the Vermont Supreme Court held that, under its Constitution, same-sex couples could not be deprived of statutory benefits and protections given to opposite-sex couples who married. *Baker* v. *State,* 170 Vt. 194, 197 (1999). The court left to the Legislature whether to include the rights "within the marriage laws themselves or a parallel 'domestic partnership' system or some equivalent statutory alternative." *Id.* at 197-198. In 2000, the Vermont Legislature created civil unions that entitled same-sex couples to "all the same benefits, protections, and responsibilities under law . . . as are granted to spouses in a civil marriage." Vt. Stat. Ann. tit. 15, § 1204(a) (LexisNexis 2010). In addition, the statute requires that any terms or definitions "that denote the spousal relationship" (e.g., spouse, family, immediate family, dependent, next of kin) shall include a "party to a civil union." Vt. Stat. Ann. tit. 15, § 1204(b) (Lexis-Nexis 2010). In 2009, the Vermont Legislature repealed por-

---

[2] The plaintiff has not asserted that his partner from his Vermont civil union is deceased. In his statement of uncontested facts the judge implicitly assumed that the partner was alive.

[3] There is nothing in the record concerning whether the defendant knew about the civil union before he discovered that it was not dissolved. He states in his brief, "upon learning of the existence of [the plaintiff's] undissolved civil union" he filed various motions with the court.

tions of the civil union statutes and redefined the civil marriage statute allowing same-sex couples to marry. 2009 Vt. Laws 3 (effective Sept. 1, 2009). The statute did not convert existing same-sex civil unions into marriage; civil unions established before September 1, 2009, remain in full legal force and effect. See Summary of the Acts and Resolves of the 2009 Vermont General Assembly, Act 3. Individuals who were parties to a civil union were allowed to marry each other if they so chose. See *id.* However, an individual who is a party to an undissolved civil union is barred from entering into a marriage with a different party. See Vt. Stat. Ann. tit. 15, §§ 4, 511 (LexisNexis 2010).

In 2003, we declared that, under various provisions of the Massachusetts Constitution, same-sex couples were entitled to enter into civil marriage, with all its attendant rights and obligations. *Goodridge* v. *Department of Pub. Health*, 440 Mass. 309, 312, 343-344 (2003) (*Goodridge*). We also stated that all statutes dealing with polygamy and consanguinity "shall be construed in a gender neutral manner." *Id.* at 343 n.34. Subsequently, the Senate requested our opinion whether, in lieu of civil marriage, a statute establishing civil unions would be constitutional. *Opinions of the Justices*, 440 Mass. 1201, 1201-1202 (2004). We held that it was not constitutional because "it is a considered choice of language that reflects a demonstrable assigning of same-sex, largely homosexual, couples to second-class status." *Id.* at 1207.

*Discussion.* Pursuant to Massachusetts law, polygamy is illegal; a marriage is not valid if "either party . . . has a former wife or husband living." G. L. c. 207, § 4. If the polygamy statute applies to the plaintiff's civil union, his subsequent marriage to the defendant was void ab initio. G. L. c. 207, § 8. We apply principles of comity to determine whether the plaintiff's Vermont civil union is the equivalent of marriage in the Commonwealth and, therefore, under the purview of the polygamy statutes.

1. *Comity.* Comity refers to a State giving "respect and deference to the legislative enactments and public policy pronouncements of other jurisdictions," *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 369 (2006) (Spina, J., concurring)

(*Cote-Whitacre*), provided that "the State is careful to see that no wrong or injury is thereby done to its citizens, and that the policy of its own law is in no way contravened or impaired." *Pacific Wool Growers* v. *Commissioner of Corps. & Taxation*, 305 Mass. 197, 209-210 (1940). It is not a "matter of absolute obligation," *Cote-Whitacre, supra* at 368 (Spina, J., concurring), quoting *Perkins* v. *Perkins*, 225 Mass. 82, 86 (1916), but is instead a "part of the voluntary law of nations." *Cote-Whitacre, supra* at 369 (Spina, J., concurring), quoting *Hilton* v. *Guyot*, 159 U.S. 113, 163-164, 165 (1895). Comity requires us "to concede that . . . our sister States, even when they reach a different decision than we would have, are endowed with an equal measure of wisdom and sympathy." *Delk* v. *Gonzalez*, 421 Mass. 525, 530 (1995).

We follow "the general rule that the validity of a marriage is governed by the law of the State where the marriage is contracted." *Cote-Whitacre, supra* at 359 (Spina, J., concurring). As such, we ordinarily extend recognition to out-of-State marriages under principles of comity, even if such marriages would be prohibited here, unless the marriage violates Massachusetts public policy, including polygamy, consanguinity and affinity. G. L. c. 207, §§ 1, 2, 4. *Commonwealth* v. *Lane*, 113 Mass. 458, 463 (1873). See, e.g., *Boltz* v. *Boltz*, 325 Mass. 726 (1950) (recognizing New York common-law marriage); *Sutton* v. *Warren*, 10 Met. 451 (1845) (recognizing English marriage between man and his mother's sister). Here, the initial question is whether we should extend recognition to the plaintiff's civil union in the same manner as we would an out-of-State marriage under principles of comity.

2. *Recognition of Vermont civil unions*. We define marriage as "the voluntary union of two persons as spouses, to the exclusion of all others." *Goodridge, supra* at 343. This is the relationship established by Vermont civil unions, as discussed *supra*. By that definition alone, a Vermont civil union is the functional equivalent of a marriage.

It is true that the law establishing civil unions in Vermont stated that such unions had a "status" different from marriage. 2000 Vt. Laws 91, § 1 (10). However, the intent of the Vermont Legislature "in enacting the civil union laws was to create legal

equality between relationships based on civil unions and those based on marriage." *Miller-Jenkins* v. *Miller-Jenkins*, 180 Vt. 441, 462 (2006), cert. denied, 550 U.S. 918 (2007). A civil union required a legal decree to solemnize, and a legal decree is required to dissolve it, just as in a marriage. Vt. Stat. Ann. tit. 18, §§ 5160-5165, repealed by 2009 Vt. Laws 3 (LexisNexis 2000 & Supp. 2011) (licensing and certification for civil unions). All of the laws concerning divorce, e.g., property division, spousal maintenance, and child custody, apply equally to civil unions. *DeLeonardis* v. *Page*, 188 Vt. 94, 101-105 (2010). In addition, as the Vermont Supreme Court stated in *Baker* v. *State*, 170 Vt. 194, 197-198 (1999), whether the Legislature chose to allow marriage or some other form of domestic partnership did not violate the State Constitution, as long as the rights conferred were equal to those of marriage.

The plaintiff argues that the fact that, in 2009, Vermont repealed portions of its civil union statutes and amended the marriage statutes to allow same-sex couples to marry, and that civil unions were not automatically converted into marriages, demonstrates that civil unions are not marriages, are different from marriages and are not equal to marriages even in Vermont. Given our discussion of *Baker* and *Miller-Jenkins*, *supra*, we are not persuaded that these facts are determinative whether we recognize civil unions as the equivalent of marriage here, where the rights and obligations procured by those entering in a civil union were functionally identical to those of marriage.

Although the plaintiff does not suggest that *Opinions of the Justices*, *supra*, would prevent our recognizing civil unions from other States, the advisory opinion of four of the Justices bears some mention. See *id.* at 1206-1209 (preventing same-sex couples from marrying, but allowing them to enter into civil union, denies such couples their equal protection and due process rights). Recognizing civil unions solemnized elsewhere is not the same as creating civil unions as an alternative to marriage in the Commonwealth and thus does not run afoul of the conclusion of four Justices in *Opinions of the Justices*, *supra*. Rather, it removes any discriminatory treatment of same-sex couples that might flow from a civil union. Indeed, refusing to recognize a civil union would be inconsistent with the core legal and

public policy concerns articulated in *Goodridge* and *Opinions of the Justices*: protection and furtherance of the rights of same-sex couples. See note 4, *infra* (legislative action to protect non-resident same-sex couples). Refusing to recognize a legal spousal relationship that granted rights equal to those acquired through marriage, in a State that did not allow same-sex couples to marry at the time, would only perpetuate the discrimination against same-sex couples that was the concern expressed in *Opinions of the Justices*, *supra* at 1206-1208. See *Cote-Whitacre*, *supra* at 412 (Ireland, J., dissenting) (marriage law should not be interpreted to "reconstruct the edifice of discrimination we dismantled in *Goodridge*"). It also would be inconsistent for us to refuse to recognize Vermont civil unions, which *extended* the right of same-sex couples to enter into a legal, spousal relationship, where a plurality of this court concluded that principles of comity should be applied to other States' laws discriminating against same-sex couples by refusing to allow them to marry in the Commonwealth. *Id.* at 368-370, 382 (Spina, J., concurring).[4]

There is one additional compelling reason to apply the principle of comity to recognize Vermont civil unions: to avoid the uncertainty and chaos that otherwise would result. As one commentator has asserted concerning recognition of same-sex marriages by all States, the "needs of the interstate and international systems are better served by having a single clear answer to the validity of marriage," because nonrecognition allows parties to avoid their obligations or leads to inconsistent legal obligations. Singer, Same-Sex Marriage, Full Faith and Credit, and the Evasion of Obligation, 1 Stan. J. C.R. & C.L. 1, 29, 36, 50 (2005). Here, if we do not recognize the plaintiff's civil union, he would have two legal spouses, each of whom could expect virtually the same obligations from him, such as spousal or child support, inheritance, and healthcare coverage. See, e.g., Vt. Stat. Ann. tit. 15, §§ 1204(d), (e)(1), & 1206 (LexisNexis 2010); Vt. Stat. Ann. tit. 8, § 4063a (LexisNexis 2009). Likewise, the plaintiff could demand the same obligations from each of

---

[4]In July, 2008, the Legislature repealed G. L. c. 207, §§ 11, 12, and 13, the provisions at the core of *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 353 (2006), thereby allowing same-sex couples to marry in the Commonwealth, even if the State where the couple resides does not allow same-sex marriage. See St. 2008, c. 216, § 1.

his spouses. Preventing complications such as these is one of the purposes of the polygamy statutes, discussed *infra.* See generally *Commonwealth* v. *Ross,* 248 Mass. 15, 19 (1924) (purpose of polygamy statute is to "provide against the illegitimacy of children and to protect the public interests").

We shall recognize a Vermont civil union as the equivalent of marriage in the Commonwealth under principles of comity.

3. *Application of Massachusetts polygamy statutes.* Because we conclude that a Vermont civil union is the equivalent of marriage, the issue is whether, pursuant to the polygamy statutes, the defendant's marriage to the plaintiff was void ab initio. G. L. c. 207, § 8.

The plaintiff argues that the plain language of the statute states that a marriage is void only if one of the parties has a "husband" or "wife." He asserts that, because he did not have a husband or wife at the time he married the defendant, the statutes do not apply to his situation. See G. L. c. 207, § 4 (under Massachusetts law marriage is not valid if "either party . . . has a former wife or husband living").

We are not persuaded. As we stated in *Goodridge,* the polygamy statutes should be read in a gender-neutral manner. Therefore, we read the words "husband" and "wife" to mean a legal spousal relationship. *Goodridge, supra* at 343 n.34. In any event, we interpret the language to include the spousal relationship established by a civil union because it ensures that the purposes of the polygamy statutes are carried out, in particular, avoiding the confusion and uncertainty discussed above. See *Commonwealth* v. *Millican,* 449 Mass. 298, 300 (2007), quoting *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934) (statute interpreted according to intent of Legislature ascertained from words "considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished"). Under Massachusetts law, polygamy is against public policy, and there is no good faith exception.[5] *Commonwealth* v. *Mash,* 7 Met. 472 (1844) (ignorance of or honest belief about spouse's death no defense to crime of

[5]Under certain conditions, a polygamous marriage may be validated if the impediments to the subsequent marriage are removed (e.g., through divorce or death). G. L. c. 207, § 6.

polygamy). The plaintiff has a spouse in Vermont; therefore, his marriage to the defendant was void ab initio.[6] G. L. c. 207, § 8.

*Conclusion.* We answer the reported question in the affirmative: a Vermont civil union must be dissolved prior to either party entering into marriage with a third person in the Commonwealth.[7]

*So ordered.*

---

[6]Given our conclusion that a Vermont civil union is the equivalent of marriage in the Commonwealth, there is no merit to the plaintiff's assertion that the fact that his marriage license states that it was his first marriage is relevant.

We also note that the notice of intention of marriage that couples are required to fill out in the Commonwealth asks the parties to state whether they are or were a party to a civil union or domestic partnership and, if so, to identify the State or country in which it took place as well as whether it was dissolved. These questions are part of the section on the form that asks the parties whether they have been married previously and whether it was dissolved by divorce. There is nothing in the record to indicate whether the plaintiff filled out this part of the form or what the registry of vital records does when an individual states that he or she has an undissolved civil union, but the fact that the form asked this question weakens the plaintiff's argument that whether someone had a spouse is the critical issue concerning whether he could be married here.

[7]Although we decide this case under Massachusetts law, we note that the result would be the same under Vermont law, which prohibits marriage to a third party while one party is still a party in a civil union. Vt. Stat. Ann. tit. 15, §§ 4, 511 (LexisNexis 2010).