NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 108

No. 2016-004

| | |
|---|---|
| Melissa Solomon | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Jane Guidry | June Term, 2016 |

Karen R. Carroll, J.

Amy K. Butler of Law Office of Amy K. Butler, PLLC, Montpelier, for Plaintiff-Appellant.

Jane Guidry, Pro Se, Garner, North Carolina, Defendant-Appellee.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **SKOGLUND, J.**    Plaintiff Melissa Solomon appeals the dismissal, without consideration of the merits, of her petition for dissolution of a nonresident civil union.[1]  We reverse and remand.

¶ 2.    Plaintiff and defendant entered into a civil union on July 24, 2001, in Brattleboro, Vermont, but both currently reside in Wake County, North Carolina.  The parties were separated by May 2014.  The parties have no children.  In 2015, they decided to dissolve their civil union and filed an uncontested complaint in Vermont, accompanied by a final stipulation, as dictated by 15 V.S.A. § 1206(b).

---

[1]  We note that defendant Jane Guidry also asked this Court to grant the relief requested by plaintiff on appeal.

¶ 3.     The superior court dismissed the complaint, concluding that the parties failed to produce evidence that they attempted to obtain a dissolution of the civil union in North Carolina. The court went on to state that, if the parties attempted to file for dissolution in North Carolina and if a North Carolina court refused to address the matter, then "the proper appeal should be taken there." The court expressed concern that if Vermont courts "continue[d] to accept these filings and allow courts in other states to ignore precedent [set by Obergefell v. Hodges, __ U.S. __, 135 S. Ct. 2584, 2608 (2015)], the situation [would] never be resolved." This appeal followed.

¶ 4.     Plaintiff argues that (1) the court erred as a matter of law in applying the Obergefell decision; (2) the court exceeded its constitutional authority by imposing requirements not included in 15 V.S.A. § 1206(b), constituting reversible error; and (3), the trial court controverted both the plain language and the legislative intent of § 1206(b) in its dismissal, producing the exact result the statute was enacted to remedy. We reverse and remand.

¶ 5.     In order to address these issues properly, we must conduct a brief survey of the legislative history of § 1206(b). In 2000, responding to this Court's decision in Baker v. State, 170 Vt. 194, 744 A.2d 864 (1999), the Vermont Legislature created a new legal entity, the civil union, which "[e]xtend[ed] the benefits and protections of marriage to same-sex couples" through a system entirely separate from civil marriages. 1999, No. 91 (Adj. Sess.), § 1. "While a system of civil unions [did] not bestow the status of civil marriage, it [did] satisfy the legal relationships of the Common Benefits Clause." Id.

¶ 6.     Then in 2009, Vermont became the first state to legislatively recognize same-sex marriage by redefining civil marriage from "the legally recognized union of one man and one woman" to "the legally recognized union of two people." 15 V.S.A. § 8. Although not explicitly codified, the Legislature's view of the relationship between civil unions and civil marriages is clear from the extensive act summary and legislative history:

When the act takes effect on September 1, 2009, same-sex couples will have access to the civil marriage laws but may no longer establish a civil union. Couples with existing civil unions will be permitted to marry one another. The civil marriage does not dissolve the civil union. Civil unions established before September 1, 2009 will continue to be recognized in Vermont, regardless of whether the couple chooses to marry.

Act No. 3 Summary, Vermont Legislature, http://legislature.vermont.gov/assets/Documents/2010/Docs/ACTS/ACT003/ACT003%20Act%20Summary.htm [https://perma.cc/P9T2-R4ZY]. Thus, it was the Legislature's intent to maintain civil unions and civil marriages as separate legally recognized entities governed by different chapters of Title 15—civil unions under Chapter 23 and civil marriages under Chapter 1—as long as the civil union occurred prior to September 1, 2009.

¶ 7.    Next, in 2012, the Legislature amended both Chapter 11, which governs divorce and annulment, and Chapter 23 to address the "patchwork of laws regarding the recognition of legally joined same-sex couples." 2011, No. 92 (Adj. Sess.), § 1. The purpose of the amendments was "to provide access to a civil union dissolution or a divorce to nonresident couples joined in a Vermont civil union or Vermont marriage who are legally barred from dissolving the union in their state of residence." Id. (emphasis added). The Legislature noted that "while an opposite-sex out-of-state couple who marries in Vermont can get divorced in the state of residence of either party, most same-sex out-of-state couples joined in a Vermont civil union or marriage do not have this option" because their state of residence does not recognize their Vermont civil union or marriage. Id. (emphasis added).

¶ 8.    To solve this pressing issue, the Legislature enacted two new sections outlining the requirements for nonresident divorces and civil union dissolutions. Under 15 V.S.A. § 1206(b), a

nonresident civil union may be dissolved by the family court in the county in which the civil union certificate was filed if the following criteria are met:[2]

(1) The civil union of the parties was established in Vermont.

(2) Neither party's state of legal residence recognizes the couple's Vermont civil union for purposes of dissolution.

(3) There are no minor children who were born or adopted during the civil union.

(4) The parties file a stipulation together with a complaint that resolves all issues in the dissolution action. The stipulation shall be signed by both parties and shall include the following terms:

(A) An agreement that the terms and conditions of the stipulation may be incorporated into a final order of dissolution.

(B) The facts upon which the Court may base a decree of dissolution of a civil union and that bring the matter before the Court's jurisdiction.

(C) An acknowledgment that:

(i) Each party understands that if he or she wishes to litigate any issue related to the dissolution before a Vermont court, one of the parties must meet the residency requirement set forth in section 592 of this title.

(ii) Neither party is the subject of an abuse prevention order in a proceeding between the parties.

(iii) There are no minor children who were born or adopted during the civil union.

(iv) Neither party's state of legal residence recognizes the couple's Vermont civil union for purposes of dissolution.

(v) Each party has entered into the stipulation freely and voluntarily.

(vi) The parties have exchanged all financial information, including income, assets, and liabilities.

---

[2] The criteria for dissolving a nonresident civil union essentially mirrors the criteria for nonresident divorces. See 15 V.S.A. § 295(b).

4

¶ 9.    Then, in 2015, the U.S. Supreme Court held "that there is no lawful basis for a State to refuse to recognize a lawful same-sex <u>marriage</u> performed in another State on the ground of its same-sex character." <u>Obergefell</u>, 135 S. Ct. at 2608 (emphasis added).

¶ 10.    However, because civil marriage and civil unions remain legally distinct entities in Vermont and because <u>Obergefell</u> mandated that states recognize only same-sex <u>marriage</u>, uncertainty remains as to whether <u>Obergefell</u> requires other states to recognize and dissolve civil unions established in Vermont.  For that reason, § 1206(b) is still necessary to remedy the issue originally addressed by the Legislature in 2012—that "there are many same-sex couples who established a civil union . . . in Vermont who are no longer together, yet they continue to be legally bound with no recourse other than moving to Vermont and becoming residents."  2011, No. 92 (Adj. Sess.), § 1.  Thus, nonresident couples who wish to dissolve their Vermont civil unions may do so in Vermont courts, as long as they follow the requirements of § 1206(b).

¶ 11.    The parties here followed the § 1206(b) mandates.  First, while the couple originally filed their complaint in an incorrect county, it was promptly transferred to the proper county, where the license was issued.  Second, the civil union was established in Vermont, per § 1206(b)(1).  Third, § 1206(b)(3) was satisfied because there are no minor children who were born or adopted during the civil union.  Fourth, the parties filed a stipulation including all of the terms under § 1206(b)(4), listed above.

¶ 12.    Finally, the law requires an acknowledgment that "[n]either party's state of legal residence recognizes the couple's Vermont civil union for purposes of dissolution."  <u>Id</u>. § 1206(b)(4)(c)(iv).  To satisfy this element, the parties produced an affidavit from a North Carolina attorney whose practice is "dedicated to providing services to the lesbian, gay and transgender ('LQBTQ') community, including domestic relations, estate planning, and life planning."  This attorney, from research and years of practice, concluded that while North Carolina

5

"grudgingly" follows <u>Obergefell</u> and recognizes same-sex marriages for divorce proceedings, "it will accord no recognition to a 'civil union' or 'domestic partnership' for [dissolution] purpose[s]."

¶ 13. Plaintiff contends that the provided affidavit satisfied the "acknowledgment" required by § 1206(b), and thus the court erred when it refused to consider the issue and held that North Carolina was the proper venue for all filings and appeals. We agree with plaintiff. The principal purpose "of statutory construction is to determine and give effect to the intent of the Legislature," which we have determined above. <u>In re C.S.</u>, 158 Vt. 339, 343, 609 A.2d 641. 643 (1992). "Where the statute does not specifically define a term, courts resort to the common understanding of a term." <u>State v. Amsden</u>, 2013 VT 51, ¶ 19, 194 Vt. 128, 75 A.3d 612. The noun "acknowledgment" is defined as "[a] recognition of something as being factual." Black's Law Dictionary (10th ed. 2014). It would reach beyond both the written letter and the Legislature's intent to hold that the "acknowledgment" must also include actual showing of an attempt to file in the other state. For this reason, we reverse and remand to the lower court to follow the dictates of § 1206(b).

<u>Reversed and remanded</u>.

FOR THE COURT:

_____
Associate Justice

6