J-A19043-16

2016 PA Super 307

| FREYDA NEYMAN, | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| FLORENCE BUCKLEY | |
| | No. 2203 EDA 2015 |

Appeal from the Order Entered June 19, 2015
in the Court of Common Pleas of Philadelphia County Family Court
at No(s): 008400, Term June 2014

BEFORE: FORD ELLIOTT, P.J.E., OTT, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                    **FILED DECEMBER 28, 2016**

Appellant, Freyda Neyman, appeals from the order of the Philadelphia County Court of Common Pleas Family Court Division that dismissed her complaint in divorce seeking the dissolution of her Vermont civil union. Appellant claims the trial court erred in dismissing her complaint for lack of jurisdiction, and in support, she argues that under principles of comity, the Family Court Division had jurisdiction to dissolve her civil union under the Pennsylvania Divorce Code.[1] We hold that a Vermont civil union creates the functional equivalent of marriage for the purposes of dissolution and conclude the trial court erred in dismissing the complaint. Therefore, we reverse and remand for further proceedings.

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** 23 Pa.C.S. §§ 3101-3904.

On July 12, 2002, Appellant and Appellee, Florence Buckley (collectively, "the parties"), two adult Pennsylvania residents, entered into a civil union in Vermont, the first state to offer civil unions. The parties began living separate and apart in December 2002. At that time, same-sex marriage was not recognized in the United States.

In 2014, the parties each signed respective affidavits of consent, which specified that their civil union was irretrievably broken and stated the intention to request a final decree of divorce/dissolution. On June 2, 2014, Appellant filed a complaint in the trial court averring that the parties were adults who had resided in the Commonwealth of Pennsylvania for at least six months prior to the complaint and seeking the entry of a divorce/dissolution decree under Section 3301(c) of the Pennsylvania Divorce Code. On February 4, 2015, Appellant filed a praecipe to transmit the record of the entry of a final decree/dissolution of the civil union.

On June 22, 2015, the trial court dismissed Appellant's complaint stating:

> [T]he Family Court Division may only divorce parties from the 'bonds of matrimony.' Pa.R.C.P. 1920.1 (a). This court cannot issue a Decree or Order dissolving the Vermont Civil Union that is the subject of this action. Therefore, the Complaint in Divorce is hereby dismissed. The Civil Trial Division of Philadelphia County has jurisdiction over complaints seeking dissolution of civil unions as actions in equity and has entered order/judgments dissolving same.

J-A19043-16

Order, 6/22/15.[2]

Appellant filed a motion for reconsideration, which the trial court did not address. Appellant took the instant timely appeal on July 22, 2015. On August 20, 2015, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

The trial court issued a Pa.R.A.P. 1925(a) responsive opinion on February 23, 2016. The court observed the Pennsylvania Constitution of 1968 vests jurisdiction in the family court division for matters implicating domestic relations, including "divorce and annulment and property matters relating thereto." Trial Ct. Op., 2/23/16, at 6-7 (discussing Pa. Const. art. V, Sched. § 16). The court concluded the Divorce Code and the Rules of Civil Procedure refer to "divorce from the bonds of matrimony," and did not authorize the dissolution of civil unions. *Id.* at 4-5. Moreover, the court determined it was under no obligation to recognize a Vermont civil union as a marriage because Vermont maintains a distinction between a civil union and a same-sex civil marriage. *Id.* at 5. Lastly, the court noted that the appropriate forum for Appellant's action was in the civil trial division. *Id.* at 8.

On appeal, Appellant raises the following issues for review:

---

[2] Although the order dismissing Appellant's complaint was signed on June 19, 2015, it was not entered until June 22, 2015.

- 3 -

1. Whether the Court of Common Pleas Family Division has jurisdiction over the dissolution of a Vermont civil union entered into by Pennsylvania residents?

2. Whether a Vermont civil union may be treated as a marriage by a Pennsylvania court for purposes of dissolving that civil union under the Divorce Code.

Appellant's Brief at 4.[3]

As the instant case involves the question of whether a legal cause of action in dissolution exists, our standard of review is *de novo* and this Court must independently review the record to determine whether a legal divorce action is presented. **Jayne v. Jayne**, 663 A.2d 169, 172 (Pa. Super. 1995).

As to the jurisdiction of the family court divisions of the courts of common pleas, Section 952 of the Judiciary Code provides:

The divisions of a court of common pleas are administrative units composed of those judges of the court responsible for the transaction of specified classes of the business of the court. In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.

42 Pa.C.S. § 952.

The Schedule to Article 5 of the 1968 Pennsylvania Constitution pertains to Philadelphia and states:

(q) The court of common pleas through the family court division of the court of common pleas shall exercise jurisdiction in the following matters:

---

[3] We note that because Appellant's issues on appeal are inextricably linked, we discuss them in tandem.

> (i) Domestic Relations: desertion or nonsupport of wives, children and indigent parents, including children born out of wedlock; proceedings for custody of children; divorce and annulment and property matters relating thereto.

Pa. Const. Sched. Art. 5, § 16(q)(i)

The Divorce Code defines "divorce" as "divorce from the bonds of matrimony."[4]  23 Pa.C.S. § 3103; **see also** Pa.R.C.P. 1920.1.  The courts of common pleas have "original jurisdiction in cases of divorce and for the annulment of void or voidable marriages[.]"  23 Pa.C.S. § 3104(a).

Courts with jurisdiction of domestic relations have broad jurisdiction to resolve matters uniquely pertaining to matrimonial causes, including disposition of property between the parties, issues related to children, and to resolve "[a]ny other matters . . . which fairly and expeditiously may be determined and disposed of in such action."  23 Pa.C.S. § 3104(a)(5).  The Divorce Code aims to "[m]ake the law for legal dissolution of marriage

---

[4] The phrase "bonds of matrimony" is not expressly defined by statute or rule.  However, in its common usages, matrimony is a synonym for marriage.  **See** Black Law Dictionary 8th ed. 999 (defining matrimony as "The ceremony or state of being married; MARRIAGE (1)") (2004); Webster's Third New International Dictionary 1393 (1986) (defining matrimony as "**1 a :** the union of a man and woman as husband and wife **:** married state **:** married life **:** MARRIAGE); Black Law Dictionary 5th ed. 882 (1978) (defining matrimony as "Marriage (*q.v.*), in the sense of the relation or *status*, not the ceremony).  Additionally, the policies set forth in 23 Pa.C.S. § 3102 make clear that matrimony refers to marriage.  **See** 23 Pa.C.S. 3102(a)(1).

effective for dealing with the realities of matrimonial experience." 23 Pa.C.S. § 3102(a)(1).

The family court division, therefore, may exercise broad equitable power:

> In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f). In *Magee v. Magee*, 519 A.2d 994 (Pa. Super. 1987), this Court discussed the specialized role of the family court division as follows:

> The Family Court Division has all the powers that can be exercised by a court of common pleas. The need to have all matters relating to family problems directed to this specialized division is obvious, particularly when there are different claims relating to the same issue, as is the case here. Obviously, the Family Division judge is equally competent to decide the action in assumpsit, if properly brought, relating to support, medical expenses and education, founded on contract law under a separation agreement, as he is to determine the same matters under statutory and common law, pursuant to a complaint in support.

*Id*. at 996.

A brief review of the evolution of Pennsylvania, Vermont, and federal law regarding same-sex marriage and civil unions provides necessary

context to understanding the legal properties of a Vermont civil union vis-a-vis Pennsylvania law. In September 1996, the United States Congress passed the Defense of Marriage Act ("DOMA"), which codified a definition of "marriage" and "spouse" as follows: "the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." **See** 1 U.S.C. § 7. Additionally, DOMA provided:

> No State . . . shall be required to give effect to any public act . . . of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State . . . or a right or claim arising from such relationship.

**See** 28 U.S.C § 1738C.

One month later, in October 1996, Pennsylvania amended its Marriage Law to include a definition of marriage and mandate the non-recognition of marriage between persons of the same sex. Specifically, Section 1102 states:

> The following words and phrases when used in this part [the Marriage Law] shall have the meanings given to them in this section unless the context clearly indicates otherwise:
>
> *   *   *
>
> **"Marriage."** A civil contract by which one man and one woman take each other for husband and wife.

23 Pa.C.S. § 1102. Section 1704 provides:

> It is hereby declared to be the strong and longstanding public policy of this Commonwealth that marriage shall be

between one man and one woman. A marriage between persons of the same sex which was entered into in another state or foreign jurisdiction, even if valid where entered into, shall be void in this Commonwealth.

23 Pa.C.S. § 1704.

In 1999, the Vermont Supreme Court held that the Vermont Constitution required same-sex couples be afforded the same statutory rights and protections as opposite-sex couples. **Baker v. State**, 744 A.2d 864, 886 (Vt. 1999). However, the **Baker** Court did not mandate that same-sex couples be permitted to marry. **Id.** at 867. Rather, the Court required the Vermont legislature to take action to comply with its holding. **Id**. at 867. In 2000, the Vermont legislature responded to **Baker** by creating a civil union scheme.

The Vermont civil union statute specifically provided "all the same benefits, protections and responsibilities under law . . . as are granted to spouses in a civil marriage." 15 V.S.A. § 1204(a); **see also Miller-Jenkins v. Miller-Jenkins**, 912 A.2d 951, 968 (Vt. 2006) (noting intent of Vermont legislature "in enacting the civil union laws was to create legal equality between relationships based on civil unions and those based on marriage") Additionally, the Vermont civil union statute provided that any term or definition denoting a spousal relationship, such as spouse, family, immediate family, dependent, next of kin, included "a party to a civil union." 15 V.S.A. § 1204(b). Significantly, all of the laws concerning divorce, including property division, apply to civil unions under Vermont law. 15 V.S.A. §

1204(d); **see also id.** § 1206(a) (as enacted effective in 2000, Section 1206 stated: "The family court shall have jurisdiction over all proceedings relating to the dissolution of civil unions. The dissolution of civil unions shall follow the same procedures and be subject to the same substantive rights and obligations that are involved in the dissolution of marriage in accordance with chapter 11 of this title, including any residency requirements.")

Although Vermont initially did "not bestow the status of civil marriage" to same-sex unions, the Vermont legislature recognized same-sex marriage in 2009. **See Solomon v. Guidry**, ____ A.3d ____, ____, 2016 WL 5338492 at *1-2 (Vt. Sept. 23, 2016). The 2009 statute also repealed parts of the civil union statutes, but specified that civil unions entered into prior to September 1, 2009, were to remain in effect. **Id**. Under the 2009 law, parties to a civil union were free to marry each other, but were required to dissolve their civil union before marrying a different individual. **See** 15 V.S.A. §§ 4, 1204(c). Effective in 2012, Vermont amended its divorce and civil union law to address the specific problem faced by "same-sex out-of-state couples joined in a Vermont civil union or marriage because their state of residence does not recognize their union or marriage." **Solomon**, 2016 WL 5338492 at *2 (citation omitted). Vermont law thereafter recognized separate tracks for filing a complaint in divorce and a dissolution of a civil union, although both matters are subject to the jurisdiction of Vermont's family court. **See** 15

V.S.A. § 592(b) (relaxing residence requirements for complaint in divorce); *see also* 15 V.S.A. § 1206(b) (as amended effective 2012).

There are few cases in Pennsylvania addressing out-of-state civil unions. In 2011, the Berks County Court of Common Pleas Orphans Court Division in ***Himmelberger v. Dep't of Revenue***, No. 0610-286 (Berks Cty. Sept. 28, 2011) (slip op.), considered whether a petitioner, who was a party to a New Jersey civil union and whose partner had died, could apply a zero-percent spousal tax rate for inheritance purposes. The trial court rejected the petitioner's claim that she was entitled to an exemption to the inheritance tax because she conceded she was not married and therefore, she and her partner were not "husband and wife" as required by the tax statute. ***Id.*** at 11 (discussing 72 P.S. § 9116).

In ***Himmelberger***, the trial court addressed the petitioner's argument that her New Jersey civil union granting legal rights was entitled to full faith and credit. The court suggested that New Jersey civil unions were the equivalent of marriage in Pennsylvania:

> "What's in a name? That which we call a rose by any other name would smell as sweet." *Romeo and Juliet*, Act II, Scene 2, W. Shakespeare. That which New Jersey calls a "civil union" has the odor of a "marriage." By the very terms of its statutes, New Jersey gives civil union couples the very same rights, benefits, burdens, and responsibilities as spouses in a marriage, except the right to call themselves "spouses" or "married." In general, in New Jersey, partners in a civil union are treated no differently than spouses in a marriage with respect to procedures for forming and dissolving the legal relationship, rights of support, the taking of title to real

estate, causes of action normally reserved for spouses (such as wrongful death and loss of consortium), surname changes, survivors benefits, and probate rights. The only differences distinguishing the two forms of legal relationships are sexual orientation and semantics. The [c]ourt firmly believes the civil union entered into in New Jersey is the equivalent of a marriage . . . .

*Id.* at 5-6. The court concluded the petitioner's argument to extend full faith and credit to New Jersey's civil union law failed because DOMA "forg[ave] Pennsylvania from recognizing New Jersey's law." *Id.* at 12. On appeal, the Pennsylvania Commonwealth Court affirmed on the basis of the trial court's opinion on all issues. *See Himmelberger v. Dept. Revenue*, 47 A.3d 160 (Pa. Cmwlth. 2012).

On June 26, 2013, the United States Supreme Court decided *United States v. Windsor*, 133 S. Ct. 2675 (2013). At issue in *Windsor* was DOMA's definition of "marriage" as "only a legal union between one man and one woman as husband and wife" and a "spouse" as "a person of the opposite sex who is a husband or wife."[5] *Windsor*, 133 S. Ct. at 2683 (discussing 1 U.S.C. § 7). In that case, the Internal Revenue Service relied on DOMA to determine an individual in a same-sex marriage, which was recognized under New York law, was not a surviving spouse entitled to the marital exemption from federal estate tax. *Id.* at 2683 (discussing 26 U.S.C. § 2506(a)). The *Windsor* Court held that "DOMA is unconstitutional

---

[5] *Windsor* did not address 28 U.S.C. § 1783C permitting states to refuse to recognize another states' law regarding same-sex marriage. *Windsor*, 133 S. Ct. at 2682-83.

as a deprivation of the liberty of the person protected by the Fifth Amendment of the Constitution." *Id.* at 2695. The Court, however, limited its holding to "those lawful marriages," that is, those persons to "whom the State, by its marriage law, sought to protect in personhood and dignity." *Id.* at 2696.

Nearly one year later, on May 20, 2014, the United States District Court for the Middle District of Pennsylvania concluded that Pennsylvania's Marriage Law's definition of marriage and refusal to recognize out-of-state same-sex marriages were unconstitutional. *See Whitewood v. Wolf*, 992 F. Supp. 2d 410, 423-24 (M.D.Pa. 2014). The *Whitewood* court enjoined the defendants, a county and Commonwealth official, from enforcing 23 Pa.C.S. §§ 1102 and 1704 *Id.* at 423-24. The court cited *Windsor* and reasoned, "Pennsylvania's non-recognition law robs [same sex couples] who are already married of their fundamental liberty interest in the legal recognition of their marriages in Pennsylvania." *Id.* at 424.

The United States Supreme Court decided *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), on June 26, 2015—two years after *Windsor*, and four days after the Family Court dismissed the instant complaint for dissolution of the parties' civil union. The *Obergefell* Court held that states must recognize same-sex marriages entered into in other states:

> Being married in one State but having that valid marriage denied in another is one of the most perplexing and distressing complications in the law of domestic relations. Leaving the current state of affairs in place would maintain

and promote instability and uncertainty. For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing.

. . . if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined. The Court, in this decision, holds same-sex couples may exercise the fundamental right to marry in all States. It follows that the Court also must hold-and it now does hold-that there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character.

*Id.* at 2607-08. The United States Supreme Court in ***Obergefell*** held that the right to marry is a fundamental constitutional right, which may not be withheld from same sex couples and concluded "that there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." ***Id.*** at 2607-08.

***Obergefell*** does not resolve all questions regarding the status of civil unions and divorce. As discussed by the Vermont Supreme Court,

[B]ecause civil marriage and civil unions remain legally distinct entities in Vermont and because ***Obergefell*** mandated that states recognize only same-sex marriage, uncertainty remains as to whether ***Obergefell*** requires other states to recognize and dissolve civil unions established in Vermont. For that reason, § 1206(b) is still necessary to remedy the issue originally addressed by the Legislature in 2012—that "there are many same-sex couples who established a civil union . . . in Vermont who are no longer together, yet they continue to be legally

- 13 -

bound with no recourse other than moving to Vermont and becoming residents." 2011, No. 92 (Adj. Sess.), § 1. Thus, nonresident couples who wish to dissolve their Vermont civil unions may do so in Vermont courts, as long as they follow the requirements of § 1206(b).

*Solomon*, 2016 WL 5338492 at *3.

With this background in mind, we consider whether the legal principle of comity mandates recognition of a Vermont civil union as the legal equivalent of marriage for purposes of dissolution pursuant to the Divorce Code in Pennsylvania. Comity refers to the principle that one state "will give effect to laws and judicial decisions of another state out of deference and mutual respect, rather than out of duty." *Smith v. Firemens Ins. Co. of Newark, N.J.*, 590 A.2d 24, 27 (Pa. Super. 1991). This principle of comity permits litigants to seek relief in Pennsylvania courts based upon a different state's applicable law:

> We recognize the demands of comity, and our courts should be, as they are, always ready to accede to them; but comity requires of us that we administer the laws of another state between suitors in our own courts whenever this becomes necessary to the proper administration of justice in the particular case. It does not require us to dismiss the parties with directions to proceed to Maine or California or some other state in which the contract was made, or the parties were domiciled, so that the law of a given state may be administered by the courts of that state, but simply that we shall apply the same rule that the courts of the proper state would apply.

*Commonwealth v. Daven*, 148 A. 524, 526 (Pa. 1930)

"However, application of comity is a matter of judicial discretion." *Chestnut v. Pediatric Homecare of America, Inc.*, 617 A.2d 347, 350

- 14 -

(Pa. Super. 1992). "This Court has previously exercised comity when application of another state's law contradicts no public policy of Pennsylvania and instead furthers a Pennsylvania policy." ***Id.***

Pennsylvania has historically had a strong public policy preference toward the recognition of various definitions of marriage involving opposite-sex couples:

> Specifically regarding conflicts as to recognition of marital status, there is a strong policy favoring uniformity of result. In an age of widespread travel and ease of mobility, it would create inordinate confusion and defy the reasonable expectations of citizens whose marriage is valid in one state to hold that marriage invalid elsewhere. On the other hand, each state may, within constitutional limits, create laws and procedures concerning the sanctification of marriages . . . and those laws and procedures should not be circumvented by the sham of traveling to a nearby less stringent jurisdiction.

***In re Estate of Lenherr***, 314 A.2d 255, 258 (Pa. 1974) (holding that decedent's Virginia marriage, which was prohibited in Pennsylvania due to an adulterous spouse law, must be recognized in Pennsylvania for inheritance tax purposes). Indeed, it is beyond cavil that unless a marriage runs afoul of Pennsylvania public policy, "the general rule as to the validity of foreign marriages prevails." ***Schofield v. Schofield***, 51 Pa. Super. 564, 575 (1911) (holding that Delaware marriage of first cousins would be recognized in Pennsylvania in spite of statutory prohibition of such marriages in Pennsylvania).

In the instant case, we conclude that the legal properties of a Vermont civil union weigh in favor of recognizing such unions as the legal equivalent of marriage for purposes of dissolution under the Divorce Code. The Vermont legislature created civil unions in order to provide same-sex couples with a statutory equivalent to marriage at a time when same-sex marriage was not yet available anywhere in the United States. *See Baker*, 744 A.2d at 867. The Vermont statute specifically grants parties to a civil union all the same "benefits, protections and responsibilities under law" as are conferred to "spouses in a marriage." 15 V.S.A. § 1204(a). Further, Vermont law explicitly provides that the law of domestic relations, including divorce and property division, are applicable to parties to a civil union. *See id.* As noted by a Pennsylvania court in *Himmelberger*, a distinct "odor of marriage" is present in circumstances where the only substantive difference in the institutions of a civil union and marriage are "sexual orientation and semantics." *See Himmelberger* at 5-6.

Nonetheless, we recognize that the legal principle of comity should only be utilized when the application of another state's law contradicts no public policy of Pennsylvania. *See Chestnut*, 617 A.2d at 350. In the past, Pennsylvania has favored marriage as a union between opposite sexes only, as was codified in the Marriage Law in 1996. *See* 23 Pa.C.S. §§ 1102, 1704. The policies in Sections 1102 and 1704 of the Marriage Law followed the federal DOMA. *See* 1 U.S.C. § 7; 28 U.S.C. § 1738C. However, the

tectonic shift in the law regarding same-sex marriage, while not determinative in this appeal, is significant. The United States District Court for the Middle District of Pennsylvania in **Whitewood** specifically held that Pennsylvania statutes prohibiting same-sex marriage and declaring same-sex marriages entered in other jurisdictions to be void in Pennsylvania were unconstitutional and constituted an impermissible abridgment of the fundamental right of same-sex marriage. **See Whitewood**, 992 F. Supp. at 423-24. That decision, which included a permanent injunction on the enforcement of 23 Pa.C.S. §§ 1102 and 1704, was not appealed. Subsequently, the United States Supreme Court in **Obergefell** cemented the fundamental right of same-sex couples to marry and prohibited any lack of recognition of such marriages based upon the relationships "same-sex character." **See Obergefell**, 135 S. Ct at 2607-08.

In this case, when the parties entered into a Vermont civil union in 2002, civil marriage was not available to them because they are of the same sex. Moreover, the parties separated before other states began to recognize same-sex marriage. Therefore, declining to acknowledge the parties' civil union as the equivalent of marriage would essentially penalize the parties simply for their same-sex status because the Vermont civil union statute explicitly granted same-sex couples equivalent rights to those only available to opposite-sex couples through marriage at that time.

Further, recognition of a Vermont civil union as the legal equivalent of a marriage for purposes of dissolution under the Divorce Code would promote the strong Pennsylvania public policy interest in uniformity of result, particularly in the context of the recognition of marriage. **See In re Estate of Lenherr**, 314 A.2d at 258; **Schofield**, 51 Pa. Super. at 575. In **In re Estate of Lenherr**, our Pennsylvania Supreme Court warned that failing to recognize a marriage deemed valid in another jurisdiction would "create inordinate confusion and defy the reasonable expectations of citizens." **In re Estate of Lenherr**, 314 A.2d at 258. In this case, when the parties entered into a Vermont civil union, they were aware that they were subject to all of the same rights and responsibilities provided to opposite-sex couples through civil marriage. Therefore, in order to provide the parties with the uniformity of result strongly favored in Pennsylvania, this Court must recognize their Vermont civil union as the legal equivalent of a marriage for purposes of dissolution.

The application of the principle of comity to Vermont civil unions further promotes interstate uniformity and would limit forum shopping aimed at avoiding the responsibilities imposed by Vermont law in the event of dissolution. For instance, if a party to a Vermont civil union wished to avoid the equitable distribution of "marital" property or other domestic support obligations, that party could search for a jurisdiction that would decline to recognize such obligations even though they are expressly provided under

the Vermont statute. 15 V.S.A. § 1204; *See Elia-Warnken v. Elia*, 972 N.E.2d 17, 20 (Mass. 2012) (recognizing Vermont civil union is the functional equivalent of marriage and noting that refusal to recognize civil union as such would permit parties to shirk their financial responsibilities under Vermont law and potentially engage in polygamy). *But see O'Reilly-Morshead v. O'Reilly-Morshead*, 19 N.Y.S.3d 689, 697 (Sup. Ct. Monroe Cty. 2015) (dissolving civil union under general equitable principles but declining to apply equitable distribution to divide the couple's property).

We acknowledge that Vermont maintains two separate statutory schemes for the dissolution of civil unions and divorce for civil marriages. However, both institutions are subject to the same benefits and obligations under Vermont law. *See* 15 V.S.A. § 1204. Under the legal precept of comity, Pennsylvania residents should not have to travel to Vermont to avail themselves of the rights and obligations they undertook when they entered into a Vermont civil union. *See Daven*, 148 A. at 526 (holding that applying the principle of comity in Pennsylvania relieves litigants of the necessity of traveling to other jurisdictions).

For the foregoing reasons, we conclude that a Vermont civil union should be considered the legal equivalent of a marriage for the purposes of dissolution under the Pennsylvania Divorce Code. Precluding family court jurisdiction simply due to the use of the word "marriage" and "divorce" in Pennsylvania jurisdictional authority elevates mere semantics over the

fundamental domestic character of the relationship at issue. *See Magee* 519 A.2d at 996 ("The need to have all matters relating to family problems directed to this specialized division [family court] is obvious[.]"). The family court division possesses the expertise and the unique toolbox available, via the Pennsylvania Divorce Code, necessary to resolve the intimate and complex domestic matters likely to be at issue incident to the dissolution of a Vermont civil union, such as equitable distribution, child custody, and support. These benefits and obligations of marriage are the precise legal protections explicitly provided under Vermont's civil union statute and exactly what the parties knowingly accepted when they entered into a Vermont civil union. *See* 15 V.S.A. § 1204. In Vermont, the enforcement of the domestic benefits and obligations attendant to a civil union, including dissolution, is relegated to Vermont family courts. Likewise, jurisdiction over Vermont civil unions should properly vest with Pennsylvania's family courts.

Accordingly, we reverse the family court's order dismissing Appellant's complaint for dissolution of her Vermont civil union and remand for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/28/2016</u>