J-A18013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANTHONY HORBAL AND HERC MANAGEMENT SERVICES, LLC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GIANT EAGLE, INC., GIANT EAGLE OF DELAWARE INC., DANIEL SHAPIRA, DAVID SHAPIRA AND LAURA KARET | |
| Appellants | No. 1454 WDA 2016 |

Appeal from the Order June 30, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-14-013654

BEFORE:  BOWES, LAZARUS, AND OTT, JJ.

MEMORANDUM BY BOWES, J.:               **FILED JANUARY 17, 2018**

Giant Eagle, Inc., Giant Eagle of Delaware, Inc., Daniel Shapira, David Shapira, and Laura Karet (collectively "Giant Eagle"), appeal from the June 30, 2016 order sustaining in part, and overruling in part, their preliminary objections to the second amended complaint filed by Anthony Horbal and HERC Management Services, LLC ("Horbal").[1]  We reverse in part, affirm in part, and remand for proceedings consistent herewith.

---

[1] As set forth in the text, *infra*, Giant Eagle successfully petitioned for review of this interlocutory order.

Horbal commenced this action against Giant Eagle by filing a complaint on August 6, 2014. The complaint alleged the following. Horbal and Giant Eagle were both investors in an automated guided vehicle company, Seegrid Corporation ("Seegrid"). Seegrid achieved some success, but failed to sustain the revenue necessary to continue operations without regular infusions of capital. In addition to providing capital, Horbal and Giant Eagle also purchased debt from the corporation, eventually becoming Seegrid's two largest creditors. However, by late 2013, Horbal could no longer continue investing additional capital in Seegrid. Horbal alleged that, in November 2013, Giant Eagle began taking steps to ensure that Seegrid remained undercapitalized so that it could increase its stake in the company at Horbal's expense.

Horbal contended that, in furtherance of this endeavor, Giant Eagle denied Seegrid the opportunity to raise capital from outside investors, fraudulently removed Anthony Horbal from the Board of Directors, prepared term sheets to provide Seegrid with added capital which inured solely to Giant Eagle's benefit, presented those offers at the last possible instant to preclude the Board from properly scrutinizing them, and prepared, if necessary, to force Seegrid into bankruptcy. Horbal averred that Giant Eagle pursued this course of action in order to gain full control over Seegrid while diluting Horbal's ownership interest. Horbal maintained that Giant

Eagle, as Seegrid's controlling shareholder, breached its fiduciary duties to the other minority shareholders.

In addition, Horbal contended that Giant Eagle tortiously interfered with Anthony Horbal's consulting and management services agreement with Seegrid. Anthony Horbal was the company's President, and then its CEO, from 2010 until July 2014. Horbal alleged that Giant Eagle exerted undue influence over the Board of Directors not only to facilitate its fraudulent conduct, but also to remove Anthony Horbal from his management position and seat on the Board of Directors.

On August 8, 2014, two days after filing the instant complaint, Horbal filed a derivative complaint on behalf of Seegrid raising substantially the same claims in the Court of Chancery of the State of Delaware. Thereafter, on October 21, 2014, Seegrid commenced a Chapter 11 bankruptcy case in the Bankruptcy Court for the District of Delaware, and this Pennsylvania case and the Delaware action were stayed pending the resolution of the bankruptcy case. Before the Bankruptcy Court, Seegrid sought confirmation of its prepackaged reorganization plan wherein, *inter alia*, Giant Eagle would purchase $10 million in Series A preferred shares for a 40% interest in a new company ("New Seegrid"), to which Seegrid would convey all of its operating assets. In exchange for conveying its operating assets, Seegrid would acquire shares of New Seegrid common stock amounting to a 45% interest. The remaining 15% interest would be reserved for management

and employees of New Seegrid. Additional Series A shares beyond Giant Eagle's initial $10 million would be offered to Seegrid's other stockholders and convertible debt holders.

On November 17, 2014, Horbal instituted a complaint in adversary action in the Bankruptcy Court on behalf of itself and other creditors and non-controlling shareholders seeking subordination of Giant Eagle's claims against Seegrid. That complaint raised substantially similar allegations as those outlined above regarding Giant Eagle's conduct prior to the commencement of the bankruptcy action, including alleged breaches of fiduciary duties owed to Seegrid's minority shareholders. Horbal subsequently withdrew its complaint for equitable subordination. Nevertheless, it retained its objection to the reorganization plan, and it raised allegations against Giant Eagle in its objections to Seegrid's disclosure statement as to the valuation utilized in that statement and the one-sided benefit that Giant Eagle positioned itself to receive for its participation in the plan.

Subsequently, the Bankruptcy Court held a combined disclosure statement and confirmation hearing in which multiple witnesses testified. On January 20, 2015, the Bankruptcy Court filed its final order approving Seegrid's disclosure statement and confirming its reorganization plan. In so finding, the Bankruptcy Court determined that, pursuant to 11 U.S.C. §

1129(a)(3), Seegrid proposed the plan in good faith, and that the plan was the product of arm's length negotiation with Giant Eagle.

Following this determination, Horbal began litigating its shareholder derivative suit before the Delaware Chancery Court. After a hearing on July 14, 2015, the Chancery Court found that the Bankruptcy Court's ruling collaterally estopped Horbal from asserting the factual complaints regarding Giant Eagle's purported misconduct, and dismissed the matter with prejudice. **Horbal v. Shapira**, 2015 WL 4401337 (Del.Ch. 2015), *aff'd* 133 A.3d 201 (Del. 2016).

Meanwhile, the Pennsylvania litigation resumed. Prior to the commencement of the bankruptcy case, Giant Eagle had filed preliminary objections to Horbal's initial complaint. Horbal filed an amended complaint on October 28, 2014, before the matter was stayed. On November 17, 2014, Giant Eagle filed preliminary objections to Horbal's first amended complaint. Thereafter, on January 29, 2015, Giant Eagle filed a reply brief in support of its preliminary objections to Horbal's first amended complaint asserting, for the first time, that the Bankruptcy Court's factual findings in confirming Seegrid's reorganization plan collaterally estopped Horbal from pursuing claims against it in Pennsylvania. Horbal argued that collateral estoppel was an affirmative defense, and thus, could not be raised in preliminary objections. Nonetheless, by order dated February 6, 2015, the trial court noted that Horbal had waived its procedural objection to Giant

Eagle's preliminary objections on the basis of collateral estoppel and scheduled a hearing on the issue. On May 12, 2015, the trial court filed an order overruling Giant Eagle's preliminary objections.

Giant Eagle filed a notice of appeal from the trial court's May 12, 2015 order. On July 8, 2015, this Court quashed the appeal as interlocutory. *Horbal v. Giant Eagle, Inc.*, 815 WDA 2015 (Order, July 8, 2015). On August 15, 2015, Giant Eagle filed an answer and new matter to Horbal's first amended complaint largely denying the allegations lodged therein and raising as new matter its claim that Horbal's averments were barred by collateral estoppel. After Horbal replied to Giant Eagle's new matter, Giant Eagle moved for judgment on the pleadings. The trial court denied Giant Eagle's motion and scheduled the matter for trial beginning on November 9, 2015. However, the matter did not proceed to trial as the parties waited for the Delaware Supreme Court to rule on Horbal's appeal pending there, which subsequently affirmed the Delaware Chancery Court's ruling that Horbal's derivative suit was barred by collateral estoppel.

After that extended delay, Horbal filed a second amended complaint identical to its previous complaints in all relevant regards, but adding Daniel Shapira, David Shapira, and Laura Karet as additional defendants.[2] Giant

_____

[2] Giant Eagle appointed Daniel Shapira, who served as its outside counsel, to Seegrid's Board of Directors. At various times, David Shapira served as
*(Footnote Continued Next Page)*

Eagle then filed preliminary objections to Horbal's second amended complaint, contending, *inter alia*, that the decisions by both the Delaware Bankruptcy Court and also the Delaware Supreme Court collaterally estopped Horbal from proceeding with its suit. On June 30, 2016, the court partially sustained Giant Eagle's preliminary objections as to certain scandalous and impertinent material, but overruled, without explanation, the preliminary objections in all other regards, including that the matter was barred by collateral estoppel. The trial court did not respond to a request by Giant Eagle to certify that ruling for immediate appeal pursuant to 42 Pa.C.S. § 702(b), and thus, it was deemed denied on July 30, 2016. Subsequently, Giant Eagle petitioned this Court for review of the trial court's failure to certify for immediate appeal its decision to overrule Giant Eagle's preliminary objections based on its allegation that the matter was barred by collateral estoppel. We granted Giant Eagle's petition for review. The trial court declined to issue a Rule 1925(a) opinion,[3] and this matter is now before us.

Giant Eagle raises seven questions for our consideration:

_(Footnote Continued)_ ————————

CEO, President, and Executive Chairman of Giant Eagle. At all times relevant to this matter, Laura Karet served as CEO of Giant Eagle.

[3] The trial court declined to issue an opinion based on its belief that the record as it stands was sufficient for review.

I.     Whether Pennsylvania courts must follow the Delaware Supreme Court's lead in applying collateral estoppel to dismiss a breach of fiduciary duty claim identical to the one asserted here based on findings made by the Bankruptcy Court during a plan confirmation?

II.     Whether [Horbal] lacks standing to assert a direct claim for breach of fiduciary duty where the only loss alleged is a diminution of the value of its investment in [Seegrid]?

III.     Whether [Horbal's] conclusory allegation that Giant Eagle controlled Seegrid must yield to the Bankruptcy Court's findings that Giant Eagle was only a minority investor in Seegrid who, at all times, dealt with Seegrid on an arm's length basis?

IV.     Whether the conclusory allegation by [Horbal] that Defendant-Appellants Daniel Shapira, David Shapira, and Laura Karet (collectively, the "Shapiras") control Giant Eagle is fatally deficient given the undisputed fact that they have only a small fractional ownership interest in Giant Eagle?

V.     Whether the ratification of the Bankruptcy Plan by all Seegrid investors, except Mr. [Anthony] Horbal, precludes [Horbal's] breach of fiduciary duty claim based on the allegedly unfair treatment they received under the plan?

VI.     Whether an allegedly controlling shareholder, like Giant Eagle, is immune from a claim that it breached its fiduciary duty to a minority shareholder by funding a Bankruptcy Plan when all other shareholders are offered the opportunity to invest in the Plan on precisely the same terms and conditions?

VII.     Whether the Pennsylvania Supreme Court's decision in *Hilbert v. Roth*, 149 A.2d 648 ([Pa.] 1959) precludes [Horbal] from pursuing a claim for punitive damages based on alleged tortious interference given that it no longer has a claim for compensatory damages after having fully recovered them in a prior proceeding?

Appellant's brief at 4-5.

As a preliminary matter, Horbal contends that our review should be limited to the single issue Giant Eagle raised in its petition for review. Giant Eagle filed a petition for review pursuant to Pa.R.A.P. 1511, seeking our consideration of the trial court's refusal to certify its June 30, 2016 interlocutory order for immediate appeal. It argued that the trial court's partial overruling of its preliminary objections presented a controlling question of law as to which there was substantial ground for difference of opinion and that an immediate appeal from the order would materially advance the ultimate termination of the matter. *See* 42 Pa.C.S. § 702(b).

In this vein, Giant Eagle contended that the trial court erred in failing to bar Horbal's claim based on the Delaware Supreme Court's determination that the bankruptcy order collaterally estopped the claims asserted by Horbal. Giant Eagle argued that "[a]n irreconcilable conflict exists between the Delaware Supreme Court – which relied on the same Bankruptcy Order to estop the same Horbal Group Plaintiffs from asserting the same claims in Delaware Chancery Court – and the trial judge's refusal to apply collateral estoppel to [Horbal's] identical claims in this action." Petition for Review, 8/11/16, at 2 (emphasis omitted). Essentially, Giant Eagle posited that both the Bankruptcy Court's findings and the Delaware Supreme Court's determination that Horbal was collaterally estopped by those findings, provided independent bases for determining that Horbal was precluded from proceeding herein. We granted Giant Eagle's petition for review based on

our determination that this argument satisfies the dictates of 42 Pa.C.S. § 702(b) to permit our review of an otherwise interlocutory order.

The scope of our review following the grant of a petition for review is limited to the issues raised before the trial court. Pa.R.A.P. 1551. Previously, if an issue was not included in the petition for review, or fairly comprised by it, that issue was waived. **See North Hills Passavant Hosp. v. Department of Health**, 674 A.2d 742, 745 (Pa.Cmwlth. 1996). However, this rule, and the case law interpreting it, was based on a prior formulation of Pa.R.A.P. 1513. **See Graystone Academy Charter School v. Coatesville Area School Dist.**, 99 A.3d 125, 132 (Pa.Cmwlth. 2014) (noting "Issues not raised or 'fairly comprised' within the petition for review are deemed waived.")).

The relevant subsection of the Rule was amended in 2014. The current formulation of Rule 1513 reads, in pertinent part, "[a]n appellate jurisdiction petition for review shall contain . . . a general statement of the objections to the order or other determination, but the omission of an issue from the statement shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa.R.A.P. 1513(d)(5). Hence, contrary to Horbal's protestations, we may consider Giant Eagle's additional six additional issues if they are otherwise preserved for our review and the certified record permits us to address those claims.

Nevertheless, in light of our disposition of this matter, as discussed *infra*, we need only consider Giant Eagle's primary contention.

Giant Eagle challenges the trial court's overruling of its preliminary objection that Horbal's suit is barred by collateral estoppel. Thus, we adhere to the following guidelines:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

*Perelman v. Perelman*, 125 A.3d 1259, 1263 (Pa.Super. 2015) (citation omitted).

As noted above, Giant Eagle premised its preliminary objections on the preclusive effects of the Delaware Supreme Court's decision in Horbal's derivative suit, and the Delaware Bankruptcy Court's findings of facts and conclusions of law enunciated when it confirmed Seegrid's Chapter 11 reorganization plan. We have previously observed, "[c]ollateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Weissberger v. Myers*, 90 A.3d 730, 733 (Pa.Super. 2014) (citation omitted). Collateral estoppel applies to bar re-litigation of an issue where

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was

- 11 -

a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Id*. (citation omitted); *Century Indemnity Company v. OneBeacon Insurance Company*, 2017 PA Super 328 (Pa.Super. 2017) at *17-18. Finally, "[t]he judgments of the federal courts are owed their full force and effect in state courts." *Weissberger*, *supra* at 733 (citing *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012)).

Under the Bankruptcy Code, in order to be confirmed, a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). This standard requires that the plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re Hercules Offshore, Inc.*, 565 B.R. 732, 764 (Bankr. Del. 2016) (citation omitted). The Bankruptcy Court evaluates the totality of the circumstances, and has "considerable judicial discretion in finding good faith, with the most important feature being an inquiry into the fundamental fairness of the plan." *Id*. (internal quotation marks and citation omitted). This determination "is made on the information available to the court at the confirmation hearing, and is not limited to the information available when the plan was first proposed." *Id*. Thus, "information

- 12 -

affecting the good faith determination might be added to the record throughout the process leading up to confirmation." *Id*. (brackets omitted).

We begin our analysis by setting forth the relevant findings of the Bankruptcy Court for the District of Delaware and the Delaware Chancery Court. During the confirmation hearing, the Bankruptcy Court observed the following:

> I turn first to good faith. The burden rests with [Seegrid], not Giant Eagle, to demonstrate that [Seegrid] has proposed the plan in good faith. When evaluating good faith, the Third Circuit has instructed in the W.R. Grace case [(***In re WR Grace & Co., et al.***, 729 F.3d 332 (3rd Cir. 2013)], that the important point of inquiry is the plan itself, and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. And the court finds that [Seegrid] has carried its burden in this regard.
>
> The record detailing [Seegrid's] actions in the months and year leading up to the eventual bankruptcy and solicitation of the prepackaged plan have been well developed through the testimony of Messrs. Buchanan, Kalson, and Heilman. It is undisputed that for a lengthy period of time [Seegrid] needed additional liquidity to survive. The record reflects that Giant Eagle, and to a lesser extent [Horbal], provided funding over many years when Seegrid was in need. [Seegrid] has also shown that in the months and year leading up to the bankruptcy filing it pursued numerous alternatives available to it under the circumstances. The evidence presented details how [Seegrid] engaged multiple investment bankers or financial advisors . . . to seek out potential investors or purchasers.
>
> In addition, the record reflects that Adams Capital, Riverside Capital, Zouk Capital, Plug Power and other investors from the Middle East have engaged in due diligence, or expressed at least some interest in investing in [Seegrid]. Despite all of these efforts, [Seegrid] was unable to secure significant or meaningful third-party financing or to find an

- 13 -

interested purchaser in a context that would resolve its pressing economic challenges.

Having exhausted all avenues, the record reflects that Giant Eagle presented [Seegrid] with a term sheet in July 2014 that ultimately formed the backbone of the existing plan of reorganization. [Horbal] has attempted to show that because Giant Eagle devised the plan to create New Seegrid and to transfer all assets into it and to increase its own control or position, [Seegrid's] plan that memorialized this transaction was not in good faith. The record does not support this assertion.

N.T. Delaware Bankruptcy Court, 1/15/15, at 1035-1037.

The Bankruptcy Court made the following findings in confirming

Seegrid's reorganization plan:

15. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The record demonstrates that [Seegrid] and its board diligently searched for other sources of capital, hiring multiple financial advisors over a period of years and directly approach numerous sources of financing. No viable alternatives to the Plan were found; the Plan is the only viable option to continue its business. The Plan is the product of good faith, arm's length negotiations between [Seegrid], by and through its directors, officers and advisors, and [Giant Eagle]. Following such negotiations, [Seegrid], by and through its directors, officers and advisors, proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. [Seegrid's] and its board's good faith in connection with the Plan is evidence from the facts and the record of this Reorganization Case, the Disclosure Statement and the hearing thereon, and the record of the Combined Hearing and other proceedings held in this Reorganization Case. The Plan was negotiated and proposed with the purpose of maximizing the value of [Seegrid's] Estate for the benefit of all stakeholders and effectuating successful reorganization of [Seegrid].

. . . .

35. Allowance of Giant Eagle's Claims. Giant Eagle is [Seegrid's] largest shareholder and lender. Giant Eagle owns

- 14 -

approximately 31.5% of [Seegrid's] outstanding shares and has loaned [Seegrid] approximately $34 million. Substantially all of the loans made to [Seegrid] by Giant Eagle were open to all investors, including [Horbal] on the same terms as available to Giant Eagle. None of Giant Eagle's claims against, or interest in, [Seegrid] are subject to any objection, recharacterization or equitable subordination action.

Delaware Bankruptcy Court Final Order, 1/20/15, at ¶ 15, 35.

The Delaware Chancery Court dismissed Horbal's derivative complaint on two grounds: that Horbal lacked standing to pursue its claims, and that its claims were barred by collateral estoppel. In rendering its decision that Horbal's derivative action was barred by collateral estoppel, the Delaware Court of Chancery stated:

A second ground for disposing of the case today is collateral estoppel. Now, this is an issue that was raised in reply, but then the plaintiffs filed a sur-reply, such that it was fully presented. The essential argument here is that through the course of the bankruptcy proceeding, there were findings and determinations that have collateral estoppel effects on this Court.

I did read all of [the bankruptcy court] Judge Shannon's rulings, and I looked through the plan. It seemed to me that one of the key arguments that [Horbal] made in objecting to the plan was that the plan had been proposed in bad faith, essentially the culmination of the scheme that he had outlined in the complaint in front of me.

It was my impression from reviewing Judge Shannon's ruling that, during the three-day trial he had – in which there were seven witnesses, and there was a video deposition of Mr. Horbal that was played live, and I understand from Mr. Nachbar that . . . there were also witnesses presented on the papers, for a total of 12 witnesses – that Judge Shannon considered the idea that the plan was the culmination of these bad acts by Giant Eagle. He reviewed the background of the effort. He talked

about the efforts that were made. He made comments on what was done during the process by the lead director who was left on the board. I think that Judge Shannon would not have approved the plan had he thought that this was all part of a scheme by Giant Eagle culminating in the bad-faith achievement of what they ostensibly had sought all along.

I am specifically relying on not just the [bankruptcy court] transcript, but also two paragraphs of the confirmation order [(¶¶ 15 and 35)].

. . . .

This seems, to me, to be something that was actually litigated and necessary to the plan. I don't think that I could reach a contrary conclusion in this case as to everything that happened over the years being a bad-faith breach of a fiduciary duty or a self-interested scheme and not reach a result contrary to this finding. . . . If this litigation were to go back now and undo some of the debt investments made by Giant Eagle on fiduciary grounds, that would be a finding that would be directly contrary to paragraph 35 of the confirmation order, which allowed Giant Eagle's claims. It's therefore my view that this action is barred by principles of collateral estoppel.

N.T. Delaware Chancery Court, 7/14/15, at 75-79; Order, 7/17/15, at unnumbered 4.

Giant Eagle's argument is two-fold. First, it asserts that collateral estoppel applies herein to bar Horbal's claim that Giant Eagle's participation in the formulation, negotiation, and confirmation of Seegrid's Chapter 11 reorganization plan constituted a breach of its fiduciary duty to other minority shareholders. It maintains that this inquiry is the same issue Horbal presented before the Bankruptcy Court, that the Bankruptcy Court's ruling constituted a final order, and that the findings contained therein

directly contradict the factual basis of Horbal's present complaint. Giant Eagle claims that Horbal was a party to the plan confirmation proceeding, and that Horbal had a full and fair opportunity to litigate these issues prior to the confirmation of the plan since the parties conducted discovery, depositions, and four days of trial before the Bankruptcy Court. Finally, Giant Eagle argues that the court's findings were not merely *dicta*, but were essential to the court's confirmation of the plan.

Second, Giant Eagle asserts that the Delaware Supreme Court's affirmance of the Chancery Court's application of collateral estoppel to Horbal's derivative claims also precludes Horbal from maintaining suit herein. Giant Eagle designates the effect of the Delaware Supreme Court's ruling as "double collateral estoppel," and argues that this Court "should respect the Delaware Supreme Court's decision" based on the principle of judicial comity. Appellant's brief at 29-30.

Since we find that comity necessitates that this Court should defer to the decision of the Delaware Supreme Court, we need not analyze whether the findings of the Bankruptcy Court preclude Horbal from maintaining its direct claims under Pennsylvania law. Judicial comity "refers to the principle that one state 'will give effect to laws and judicial decisions of another state out of deference and mutual respect, rather than out of duty.'" ***Neyman v. Buckley***, 153 A.3d 1010, 1017 (Pa.Super. 2016) (citation omitted). In this vein, we have noted:

> We recognize the demands of comity, and our courts should be, as they are, always ready to accede to them; but comity requires us that we administer the laws of another state between suitors in our courts whenever this becomes necessary to the proper administration of justice in the particular case. It does not require us to dismiss the parties with directions to proceed to Maine or California or some other state in which the contract was made, or the parties were domiciled, so that the law of a given state may be administered by the courts of that state, but simply that we shall apply the same rule that the courts of the proper state would apply.

*Id*. (citation omitted). Nevertheless, "application of comity is a matter of judicial discretion." *Id*. (citation omitted).

Instantly, we emphasize that collateral estoppel pertains to issue preclusion, and that it applies to bar a new cause of action if the factual or legal predicate underlying those claims has previously been determined by a court of concurrent jurisdiction. *Weissberger*, *supra*. Although Horbal brought a derivative action on behalf of Seegrid in Delaware, and a direct action here, the factual basis of those complaints is identical, and thus, there is no impediment to applying the doctrine of collateral estoppel to bar Horbal's direct claims herein. Further, Horbal alleged that Giant Eagle breached its fiduciary duties to its fellow minority shareholders in Seegrid, a Delaware corporation. Claims of this nature are subject to Delaware law. 15 Pa.C.S. § 4145(a); *In re Estate of Hall*, 731 A.2d 617, 622 (Pa.Super. 1999). The Delaware Supreme Court has long been known for its expertise in corporate matters, which also militates in favor of acceding to the demands of comity in this case.

In addition, the law regarding collateral estoppel, as applied by the Delaware Supreme Court, is substantially similar to the test utilized in this Commonwealth. Under Delaware law, the "preclusive effect of a foreign judgment is measured by standards of the rendering forum." *Acierno v. New Castle Cty.*, 679 A.2d 455, 459 (Del. 1996). Since the Bankruptcy Court issued the disputed opinion, the Delaware Supreme Court relied upon the law of the United States Court of Appeals for the Third Circuit. The Third Circuit evaluates the following requirements when determining whether collateral estoppel applies: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3rd Cir. 2006). We observe that the test is co-extensive with our own and, similar to our own standards, dedicated to ensuring that a party's due process rights are not violated by the operation of the principle.

Moreover, in light of the extensive resources expended in the litigation of this matter in Bankruptcy Court, Delaware state court, arbitration, and now before the courts of this Commonwealth, we find it would not be an efficient use of judicial assets to permit the continued pursuit of Horbal's claims. The parties and our sister jurisdictions have exhausted significant resources in disposing of the very issues before us. Thus, for this additional

reason, we defer to the ruling of the Delaware Supreme Court that Horbal's claim that Giant Eagle breached its fiduciary duties is barred by collateral estoppel.

Finally, in its second amended complaint, Horbal alleged that Giant Eagle tortiously interfered with Anthony Horbal's consulting and management services agreement with Seegrid. This claim was not raised in the derivative complaint adjudicated before the Delaware Supreme Court, and thus, our deference to the Delaware Supreme Court's determination does not settle that issue. In this regard, Horbal alleged that Giant Eagle exercised impermissible control over members of Seegrid's Board of Directors, and conspired to terminate Anthony Horbal from his position as Seegrid's CEO. Those allegations do not necessarily run counter to the Bankruptcy Court's determination that Giant Eagle engaged in fair, arm's length negotiations with Seegrid when proposing and formulating the reorganization plan.

Instantly, Giant Eagle filed with this Court a supplement to the certified record pursuant to Pa.R.A.P. 1926, which included a settlement and release agreement. Giant Eagle contends that this agreement "fully and completely" resolved Horbal's claim for compensatory damages arising from this alleged tortious conduct. Appellant's brief at 44. It maintains that, because Horbal has been fully recompensed for compensatory damages, it cannot now proceed on a "naked claim for punitive damages." *Id*. at 45.

Horbal does not dispute the existence of the settlement agreement, but rather, it claims that it has a basis to seek punitive damages since Giant Eagle may still be found liable for compensatory damages beyond those owed by Seegrid pursuant to the Bankruptcy Court order, for attorney fees, and for consequential damages and disgorgement.

As previously stated, this matter is not disposed of by our analysis above. We note that the trial court did not have the benefit of the settlement agreement when it considered Giant Eagle's preliminary objections, and therefore, it did not determine the effect of that document on Horbal's remaining claim. Further, the settlement agreement arose as a result of a proof of claim regarding post-termination fees owed to Mr. Horbal by Seegrid, which was litigated in post-confirmation proceedings before the Bankruptcy Court. The Bankruptcy Court determined that the consulting and management services agreement was controlling at the time Mr. Horbal was terminated from his position of CEO of Seegrid in 2014, and, under the terms of that agreement, that Mr. Horbal was owed $282,537.66. Bankruptcy Court Opinion, 10/27/16, at 11-21.

Thereafter, Horbal and Seegrid memorialized Seegrid's agreement to remunerate Mr. Horbal according to the terms of the Bankruptcy Court post-confirmation order. Under the settlement and release agreement, Horbal agreed to accept $205,843.19 in exchange for the full and complete resolution of his claim that Seegrid breached the consulting and

management agreement. However, the settlement and release agreement expressly provided that the release did "not extinguish or affect [Horbal's] claims or allegations asserted or that may be asserted in their Third Amended Complaint in" this matter. Settlement and Release Agreement, 11/10/16, ¶ 5. Further, the settlement and release agreement indicated that it did not extend to "any defenses, claims or counterclaims [Giant Eagle in the present proceeding] may have against [Horbal]." *Id*. at ¶ 6. Finally, Horbal argues that the payments made by Seegrid pursuant to the settlement and release agreement satisfied its breach of contract claim against Seegrid, but it was not sufficient to satisfy the extent of the alleged damages caused by Giant Eagle's tortious interference with that same contract.

Questions of fact remain undecided by the trial court with regard to the extent and effect of the consulting and management agreement as well as the settlement and release agreement between Horbal and Seegrid. We find that the certified record is not adequate to address the merits of this issue at the present juncture. Pa.R.A.P. 1551. Accordingly, we affirm the trial court's decision to overrule Giant Eagle's preliminary objections with regard to Horbal's claim for tortious interference with a contract, and reverse with regard to its ruling that collateral estoppel does not bar the claims for breach of fiduciary duties.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2018