Commonwealth ex rel. Alexander *v.* Alexander, Appellant.

Argued January 7, 1971. Before Bell, C. J., Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Arneda J. Hazell,* for appellant.

*Edward B. Rosenberg,* for appellee.

Opinion by Mr. Justice Pomeroy, December 20, 1971:

This appeal involves an action for maintenance and support by appellee against appellant in which the lower court issued a support order in favor of appel-

lee in the amount of eighteen dollars per week. The Superior Court affirmed *per curiam,* without opinion, three judges dissenting.[1] We granted allocatur to determine whether the lower court abused its discretion in making the findings of fact upon which the support order was based.

The several hearings leading up to the final order began on November 18, 1963, at which time a temporary support order was entered, and culminated in a hearing held on September 13, 1968,[2] shortly after which the final order was entered. The testimony from the hearings can be summarized as follows:

Appellee testified that she and appellant were married in Elkton, Maryland on November 11, 1961, and that in July, 1963 her husband deserted her to take up residence with another woman. A certified copy of the application for a marriage license and the certificate of marriage from Cecil County, Maryland was introduced in support of appellee's testimony. Appellant admitted the truth of appellee's testimony and supporting evidence, but he attempted to prove an impediment to the marriage by showing that both parties were previously married to other spouses and that neither had obtained a divorce.

As to appellee's prior marriage, appellant testified that appellee had told him that she had formerly married one Almanus Hill. Appellant introduced a 1948 marriage certificate evidencing the marriage of one Doris Wilson and Almanus Hill in Union County,

---

[1] A *dissenting opinion* was filed by Judge HOFFMAN, in which Judges SPAULDING and CERCONE joined. 215 Pa. Superior Ct. 297, 257 A. 2d 887 (1969).

[2] During this time an appeal was prosecuted to the Superior Court which resulted in a remand to the lower court to hold continuous hearings and determine if the parties herein were ever lawfully married. *Commonwealth ex rel. Alexander v. Alexander,* 212 Pa. Superior Ct. 543, 244 A. 2d 441 (1968).

South Carolina.[3] Appellee steadfastly denied appellant's testimony, stating that she had never been married before and that her maiden name was Doris Hill. The Common Pleas Court found that appellant had not sufficiently supported his allegation of appellee's prior marriage. In light of the evidence presented and since credibility is a matter solely within the province of the trial judge, *Cowen v. Krasas,* 438 Pa. 171, 175, 264 A. 2d 628 (1970), *Kalyvas v. Kalyvas,* 371 Pa. 371, 376, 89 A. 2d 819 (1952), this finding was not an abuse of discretion.

As to his own previous marriage, appellant testified that he married one Loretta Vicks[4] in the summer of 1950. Subsequently,[5] however, appellant testified that he married Miss Vicks in July, 1952, and he introduced a certified copy of a marriage certificate between Fort A. Alexander and one Loureatha Vicks evidencing a wedding between those parties on July 5, 1952, in Pelham, Georgia. He also introduced a certified copy of a divorce a.v.m. obtained from the same woman, granted by the Court of Common Pleas of Philadelphia County on August 9, 1967.[6] Appellant further testified that his former wife (Miss Vicks) was still living, because he had seen her in July, 1968. In light of this evidence, appellant argues that the trial judge abused

---

[3] It was argued in the lower court that the signatures of Doris Wilson and Doris Hill (the signature on the Cecil County, Maryland marriage certificate) were so similar that the lower court should recognize that the two Dorises were one and the same person.

[4] The surname Loretta was given two different spellings in the lower court.

[5] The conflicting testimony was given at two separate hearings. It should be noted that there were five hearings with regard to this matter, covering a time span of about 5 years (November 1963 to September 1968).

[6] The record shows that appellant married a third woman, not involved in these proceedings, on September 9, 1967.

his discretion in finding the parties to this action to have been validly married.

Since it is undisputed that appellee and appellant participated in a marriage ceremony on November 11, 1961, the appellee esablished a prima facie case as to her right to support. Thereupon the burden became appellant's to show the invalidity of that marriage and so defeat a support obligation. *Cf. Watt Estate,* 409 Pa. 44, 54, 185 A. 2d 781 (1962); *accord, D'Ippolito Estate,* 420 Pa. 541, 218 A. 2d 224 (1966). The sole issue on this appeal is whether appellant carried that burden of proof.

As a starting point, we shall accept appellant's uncontradicted testimony, corroborated by a marriage certificate, that he was validly married to Loureatha Vicks in Georgia in 1952. It is clear that if that marriage was not terminated by divorce or by the death of Loureatha prior to the 1961 wedding ceremony between the present parties, the purported marriage to appellee would be void, and appellee would not be entitled to support. *Heffner v. Heffner,* 23 Pa. 104, 106 (1854). As stated above, however, the burden to show that such termination has not occurred was upon appellant.

As noted in *Watt Estate, supra,* at pp. 51, 52, the factual situation in this case gives rise to competing presumptions. On the one hand, with reference to the first marriage, that of 1951, the law presumes that it continues until the death of one of the parties or a divorce. On the other hand, the law recognizes the presumption of innocence in contracting a second marriage as well as a presumption of the validity of the second marriage. In *Watt Estate* we stated that the second presumption, in itself, does not overcome the first presumption, but that "[t]he real thrust of the several presumptions is to place the burden of proving the invalidity of the second marriage upon the person

who claims such invalidity and to require proof of some nature that the first marriage was not dissolved by death or divorce at the time of the second marriage." *Id.* at 54.

Petitioner testified that he first discovered he was not divorced from his first wife when he filed for divorce in 1967. He argues that this constituted proof of "some nature" that the first marriage was in existence at the time of contracting the second.

It is clear that appellant's position depends in substantial degree upon his credibility and, as we have noted above, credibility of a witness is not for this Court to pass upon; we will not substitute our judgment for that of the fact finder when there is sufficient evidence to support his conclusions. *Burbage v. Boiler Eng. & Supp. Co., Inc.,* 433 Pa. 319, 323, 249 A. 2d 563 (1969). We do note, however, that appellant's self-serving declarations that he and his first spouse had not been divorced prior to 1967,[7] unsupported by any corroborative evidence, is open to doubt, especially in light of appellant's own prior testimony that his first wife had remarried and conceived a child.

Based on this record, we cannot find that the lower court abused its discretion in finding that appellant did not carry his burden of proof to show that either he or appellee were incapable of entering into a valid marriage in 1961.[8] Accordingly we affirm.

---

[7] The divorce decree obtained in this state in 1967, during the pendency of this proceeding, by itself, is not conclusive of the question of whether or not there had been a prior divorce between the same parties. The trial court viewed the procurement of this divorce with suspicion, and found that the circumstances were at least suggestive of collusion.

[8] We need not reach appellee's argument that appellant should be estopped from asserting the invalidity of the second marriage, but we note that this position appears to have merit, especially in light of the lower court's finding (despite appellant's testimony to

412

Order affirmed.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice O'BRIEN dissents.

CONCURRING OPINION BY MR. JUSTICE JONES:

I concur in order to reveal an error committed by the trial court and to amplify the Majority's alternative reason for affirming the support order.

In light of the well-established presumption that a valid marriage continues until the death of one of the parties or a divorce is proven, *e.g., Schaefer v. Schafer,* 189 Pa. Superior Ct. 120, 149 A. 2d 578 (1959), proof of appellant's prior marriage to Loretta Vicks on July 5, 1952, in Pelham, Georgia, would normally carry great weight. Indeed, the Georgia marriage certificate, to which we are required to give full faith and credit, certainly evidences appellant's prior marriage. Nonetheless, the trial court concluded, "[t]here is no testimony but a perjurer's testimony that this respondent was actually married in 1952." In my view, to ignore this document constitutes a clear abuse of discretion and an error of law.

However, in light of the conflicting presumptions of innocence in contracting a second marriage and validity of the second marriage, we have stated that, "[t]he real thrust of the several presumptions is to place the burden of proving the invalidity of the second marriage upon the person who claims such invalidity and to require proof of *some nature* that the first marriage was not dissolved by death or divorce at the time of the second marriage." (Emphasis original)

the contrary) that at the time of the 1961 ceremony appellee had no knowledge or reason to suspect that appellant had been previously married. See *Watt Estate, supra,* at 65, 66. See also *Richardson's Estate,* 132 Pa. 292, 293-94 (1890), *Hilton's Estate,* 263 Pa. 16 (1919).

*Watt Estate,* 409 Pa. 44, 54, 185 A. 2d 781, 786 (1962). Although the Majority, unlike the trial judge, has recognized the Georgia marriage certificate, the Majority opinion turns upon appellant's failure to sustain his burden of proving Loretta Vicks' death or a divorce before appellant's second marriage. Since appellant instituted and received a divorce a.v.m. from Loretta Vicks on August 9, 1967, it might be argued that appellant's decision to obtain this divorce decree from the Philadelphia Court of Common Pleas, an unnecessary step if appellant was previously divorced from Loretta Vicks, constitutes "proof of some nature that the first marriage was not dissolved by . . . divorce at the time of the second marriage." Insofar as appellant seeks to avoid support payments due to his allegedly bigamous behavior, I do not believe that this colorable argument is entitled to great weight.

For these reasons I am able to concur in the order of affirmance.

Mr. Chief Justice BELL joins in this concurring opinion.