J-A08024-26
J-A08025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASISAT ADEWALE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHERIFF ABIODUN ADEWALE | : | No. 462 EDA 2025 |

Appeal from the Order Entered January 16, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 20-07767,
PACSES: 233300533

| | | |
|---|---|---|
| SHERIFF ABIODUN ADEWALE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ASISAT ADEWALE | : | |
| | : | |
| Appellant | : | No. 463 EDA 2025 |

Appeal from the Order Entered January 16, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): D20068456

| | | |
|---|---|---|
| ASISAT ADEWALE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHERIFF ABIODUN ADEWALE | : | |
| | : | |
| Appellant | : | No. 545 EDA 2025 |

Appeal from the Order Entered January 16, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 20-07767,
PACSES: 233300533

J-A08024-26
J-A08025-26

| | | |
|---|---|---|
| SHERIFF ABIODUN ADEWALE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ASISAT ADEWALE | : | No. 546 EDA 2025 |

Appeal from the Order Entered January 16, 2025
In the Court of Common Pleas of Philadelphia County Domestic
Relations at No(s):  D20068456

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 22, 2026**

Asisat Adewale ("Wife") appeals from the orders of the Court of Common Pleas of Philadelphia County entering a declaratory judgment invalidating her marriage to Sheriff Abidoun Adewale ("Husband") and terminating Husband's obligation to pay Wife alimony *pendente lite* (APL).  Wife claims the trial court erred in determining that the parties' marriage was void *ab initio* based on its finding that Wife was married to another individual at the time of the parties' purported marriage.  Husband filed cross-appeals, claiming the trial court erred in failing to credit Husband's previous APL payments.  We affirm.[1]

The parties were married on April 21, 2011 in Lagos, Nigeria in a ceremony under Nigerian statutory law.[2]  Notes of Testimony (N.T.), 8/9/22,

_____

[*] Former Justice specially assigned to the Superior Court.
[1] Although we affirm the trial court's order finding the parties' marriage to be void, we refer to the parties as "Husband" and "Wife" for ease of review.
[2] As discussed *infra*, Nigeria has a plural legal system where different legal systems (statutory law, customary law, and Islamic law) apply to different communities in Nigeria.  N.T., 8/9/22, at 113.

- 2 -

at 180-81. Husband indicated that at no time did Wife inform him that she had been previously married. *Id.* at 177-80. While the couple lived in Nigeria in the first two years of their marriage, Husband traveled internationally and Wife spent significant time in the United States. As Wife had become a U.S. citizen after receiving a Diversity Visa through the lottery program in 1999, she filed for Husband's entry into the U.S. as her spouse in 2012. *Id.* at 193-94; N.T., 2/14/23, at 34-36, 48. In April 2013, Husband joined Wife in the U.S.; both of the parties are now dual citizens of Nigeria and the U.S. N.T., 2/14/23, at 34-36. The couple resided in Philadelphia until their separation in 2018. N.T., 8/9/22, at 195.

While Husband initially filed for divorce in Cameron County, the matter was transferred to Philadelphia County on February 19, 2020. Wife filed her answer and counterclaim on October 14, 2020 and a complaint for support on October 27, 2020. An interim order of support was entered requiring Husband to pay Wife $3,300.00 monthly APL effective October 26, 2020.

In the meantime, the parties had agreed to arbitrate equitable distribution. After Wife filed a petition to modify APL, the trial court entered an order on October 14, 2021 in which it increased Wife's APL based on the parties' stipulation that Husband would pay Wife $8,000.00 APL each month with an additional $2,000.00 payment towards arrears.

During the arbitration process, Husband began to question the validity of the parties' marriage as he discovered that Wife may have been married to another person at the time of the parties' marriage. On July 7, 2021, Wife

filed an Emergency Petition for Special Relief to prevent Husband from pursuing an annulment action he filed in Nigeria on July 5, 2021. On July 9, 2021, Wife filed a Petition for Declaratory Judgment pursuant to 23 Pa.C.S.A. § 3306, asking the trial court to find the parties' marriage to be legally valid.[3]

After a hearing, on September 9, 2021, the trial court concluded that jurisdiction for the parties' divorce and equitable distribution matters was properly held in Philadelphia County as both parties were domiciled in Pennsylvania. The trial court provided that Husband was "enjoined from filing and/or pursuing an annulment action and/or any other divorce actions against Wife" in Nigeria or any other jurisdiction. Order, 9/9/21, at 1.

On October 4, 2021, Husband filed his Counterclaim for Declaratory Judgment to Determine Marital Status ("Counterclaim for Declaratory Judgment"), claiming the parties' marriage was void. Wife eventually filed a Praecipe to Withdraw her Petition for Declaratory Judgment on March 1, 2022.

The trial court allowed the parties to present extensive evidence over ten separate hearings that took place between August 5, 2021 and January 3, 2024 on the issue of whether the parties' marriage was valid under the law of

---

[3] Section 3306 provides that "[w]hen the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of the court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned." 23 Pa.C.S.A. § 3306.

Nigeria, where the marriage was celebrated.[4]  Given the sheer amount of testimony and evidence presented on this issue, we summarize the key evidence relied upon by the trial court as both parties presented a large number of witnesses.

Husband claimed the parties' marriage should be invalidated as Wife was the spouse of William Lasisi ("Lasisi") when Husband and Wife married in 2011.  N.T., 8/5/21, at 29-34.  Lasisi, who testified on Husband's behalf, confirmed that he had married Wife in 2001 in Lagos, Nigeria, and still believed Wife was his spouse.  N.T., 8/8/22, at 34, 94.  Lasisi presented a wedding certificate for the 2001 ceremony as well as multiple photographs of Wife and Lasisi participating in various wedding ceremony rituals.  *Id.* at 34-75.

Husband also presented the testimony of several expert witnesses including Dr. Nwando Achebe ("Dr. Achebe"), an expert in Nigerian marriage, who agreed that the photographic exhibits showed Wife marrying Lasisi in a ceremony under traditional/customary law and Islamic law.  N.T., 8/8/22, at 230-31, 303-304. Dr. Olubukoli Adewemi Olugasa ("Dr. Olugasa"), Husband's

---

[4] The trial court recognized that the law of the state in which a marriage is celebrated governs the validity of the marriage. *Jewett v. Jewett*, 175 A.2d 141, 142 (Pa. Super. 1961). "[I]f a marriage is invalid under the laws of the state wherein it was celebrated it will not be recognized elsewhere, regardless of the laws of the present domiciliary state or of the forum." *Id.* (citing *In re Stull's Estate*, 183 Pa. 625, 39 A. 16 (1898)).  However, we also note that our courts have held that "[a] marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid unless it violates the strong public policy of another state[.]" *Bordone v. Bordone*, 344 A.3d 852, 859 (Pa. Super. 2025) (quoting *In re Lenherr's Est.*, 455 Pa. 225, 314 A.2d 255, 258 (1974)).

expert in Nigerian marital law, opined that Wife and Husband's marriage was invalid under Nigerian statutory law as at the time of their purported marriage, Wife was still married to Lasisi by customary marriage not yet dissolved. N.T., 8/9/22, at 103, 110-111, 129; Olugasa Expert Report, at 6.

Wife disputed Husband's challenge to the validity of their marriage with multiple arguments that were often contradictory. Wife initially argued that the photographs that Husband presented showing Wife marrying Lasisi had been manipulated and were not authentic. N.T., 8/5/21, at 70-77. However, after Husband retained a photography expert who analyzed the photos and opined that they were real, Wife withdrew this argument, claiming she had suffered an unspecified mental health incident which caused her to deny the validity of the photographs. N.T., 8/29/22, 220-21; N.T., 2/13/23, at 206-209; N.T., 2/14/23, at 124-25, 164-67.

Wife also argued that the photographs in question did not show Wife and Lasisi marrying, but instead participating in an "introduction ceremony," a preliminary requirement to marriage which did not contain the necessary requisites for a valid marriage in Nigeria. N.T., 8/5/21, at 57-58, 68-72; N.T., 2/13/23, at 135-192; N.T., 2/14/23, at 72.

Wife offered the testimony of Judge Surajudeen Onigbanjo ("Judge Onigbanjo"), who had served on the State High Court of Lagos, Nigeria, as well as the testimony of Judge Iris Abdullahi Haroon ("Judge Haroon"), retired Grand Kadi of the Sharia Court of Appeal in Kwara State, who both asserted that they did not believe that that Wife's marriage to Lasisi was valid as

Husband failed to present evidence that a dowry or *sadaq* was paid. Onigbanjo Video Deposition, 3/29/23, at 28, 52-54, 62, 63; Haroon Video Deposition, 3/24/23, at 10, 52, 60. Wife claimed that she had never married Lasisi, as their relationship "soured" for various reasons. N.T., 2/14/23, at 74.

In addition, Wife argued that she could not have married Lasisi in 2001 as she was first married to another man named Folarin Akinsanya ("Akinsanya") in December 1997 in Nigeria. N.T., 2/13/23, at 40-41, 133; N.T., 2/24/23, at 41. Wife indicated that she could not locate any of the photographs and videos of her wedding to Akinsanya but presented a wedding certificate as well as witnesses to confirm that the wedding occurred. N.T., 2/13/23, at 81-82; N.T., 2/14/23, at 43-44.

Further, Wife offered an alternative argument claiming that even if the trial court found she had married Lasisi, she and Lasisi had divorced in 2006 through a family meeting in which Lasisi told Wife "I divorce you" three times. N.T., 2/14/23, 85-86. Judge Haroon, indicated that this verbal declaration, referred to as triple *talaq*, is a recognized procedure for a husband to obtain a divorce in an Islamic marriage. Haroon Deposition, 3/24/23, at 46-48.

On January 16, 2025, the trial court entered orders on the divorce and support dockets declaring that the parties' marriage was void *ab initio*, terminating Husband's alimony *pendente lite* obligations, and setting Husband's support arrears balance to zero. The trial court set forth its rationale which was based on several factual findings.

First, the trial court found that Wife married Lasisi on September 1, 2001 pursuant to Nigerian traditional/customary law as well as Islamic law. Second, the trial court found that Wife had not shown that her marriage to Lasiss was dissolved at the time of Husband and Wife's marriage in 2011. Third, the trial court rejected Wife's claim that she could not have married Lasisi because she was already married to Akinsanya; the trial court found, *inter alia*, that "[o]utside of a marriage license of dubious authenticity, there is no documentary, video, or photographic evidence whatsoever of any wedding ceremony or celebration"  for a marriage between Wife and Akinsanya.  Order, 1/16/25, at 3.  Lastly, the trial court found that as Wife was married to Lasisi, she was barred from entering a statutory marriage to Husband in 2011.

Wife filed timely appeals of the trial court's January 16, 2025 orders and Husband filed a timely cross-appeal.[5]  Both parties complied with the trial court's direction to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Wife raises the following issues for review:

1. Whether the trial court erred as a matter of law and/or abused its discretion by finding that the parties' marriage under Nigerian Statutory Law on April 21, 2011, was void *ab initio* and by terminating the order for alimony *pendente lite*?

_____

[5] The parties filed separate appeals on the divorce and support dockets; we have consolidated Wife's appeals with Husband's cross-appeals for review.

2. Whether the trial court erred as a matter of law and/or abused its discretion by finding that Wife was married to William[] Lasisi on September 01, 2001?

3. Whether the trial court erred as a matter of law and/or abused its discretion by failing to find that Husband did not meet his burden of proof to nullify the parties' Nigerian Statutory Marriage on April 21, 2011 based on a previous subsisting marriage under Nigerian Traditional Law and Custom?

4. Whether the trial court erred as a matter of law and/or abused its discretion by failing to find that the marriage which allegedly occurred between Wife and Willliam Lasisi on September 01, 2001 was terminated by divorce prior to Wife's marriage to Husband on April 21, 2011?

5. Whether the trial court erred as a matter of law and/or abused its discretion by failing to give reasonable and appropriate weight to the testimony of Wife's witnesses who were credible and/or were uncontroverted while, at the same time, giving substantial weight to the testimony of Husband's witnesses who were not credible and/or not uncontroverted?

6. Whether the trial court erred as a matter of law and/or abused its discretion by displaying bias against Wife and issuing an Order that is manifestly unreasonable and beyond the weight of the evidence presented at trial?

Wife's Brief, at 4-5 (renumbered).

In his cross-appeal, Husband raises the following issues for our review:

1. Having properly determined the parties' purported marriage is null and void *ab initio*, terminating the alimony *pendente lite* order, and ordering any alimony *pendente lite* arrears balance set to zero, the trial court committed an error of law and abuse of discretion by failing to, likewise, order that [Husband] receive a credit for all alimony *pendente lite* payments made to [Wife] which is the logical and legal corollary to the vacating of arrears, resulting in an inconsistent order and unequal justice for [Husband]?

2. The trial court committed an error of law and abuse of discretion by failing and omitting to order that [Husband]

> receive a credit on [his] PACSES account for all alimony *pendente lite* payments made, as an annulment decree/order is a matrimonial cause (23 Pa.C.S.A. § 3323(a)), and under 23 Pa.C.S.A. § 3323(f) "Equity power and jurisdiction of the court," the trial court should exercise fully equity power and jurisdiction to enter orders "necessary to protect the interest of the parties or to effectuate the purposes of this part" and should "grant such other relief or remedy as equity and justice require."
>
> 3. The trial court erred as a matter of law and/or abused its discretion by failing and omitting to order that [Husband] receive a credit on [his] PACSES account for all alimony *pendente lite* payments made by violating 23 Pa.C.S.A. § 3702(a) after the trial court "determined" by its annulment decree, the purported marriage "to be null and void *ab initio*," by law it declared that no marriage ever took place and no marriage ever existed and, as such, the case at bar is not "a proper case" under 23 Pa.C.S.A. § 3702(a), and equity is bound to order full and consistent judgment and will not tolerate unjust enrichment.

Husband's Brief, at 3-4.

We begin by evaluating the merits of Wife's appeal in which she raises various challenges to the trial court's determination that the parties' marriage was void *ab initio*. We are guided by the following standard of review:

> Our standard of review of an order granting or denying a complaint requesting that a marriage be declared void or voidable is limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court. The application of the law, however, is always subject to our plenary review.

***Bordone v. Bordone***, 344 A.3d 852, 856 (Pa. Super. 2025) (quoting

***Asumana v. Asumana***, 318 A.3d 950, 953 (Pa. Super. 2024)).

As noted above, as a general rule, the law of the state where the parties' marriage is celebrated governs the determination of whether the marriage

was valid at its inception unless it violates the strong public policy of the forum state. *Bordone*, *supra* note 2. The trial court set forth the following background on the types of marriage in Nigeria based on expert testimony presented at the hearings in this case:

> There are three types of marriage in Nigeria: (1) statutory or Court marriages under the Marriage Act of Nigeria (hereinafter the "Marriage Act"), (2) marriage by traditional law and custom, and (3) Islamic marriage. N.T., 8/8/2022 at 235-36. A man and woman may be married under any one of these methods, or multiple at once. However, a statutory marriage under the Marriage Act of Nigeria is invalid "where either of the parties thereto at the time of the celebration of such marriage is married under customary law to any person other than the person with whom such marriage is had." *See* Marriage Act 33 (1914) (Nigeria).
>
> Under Nigerian traditional law and custom, polygamy is legal, meaning it is possible for a man to marry more than one woman. Islamic marriages allow for a man to take up to four wives at a time. N.T., 8/8/2022, at 242. Women in Nigeria are not allowed to take more than one husband; this practice is called polyandry, which was banned in the 1960s. *Id.* at 220-21.

Trial Court Opinion (T.C.O.), 8/8/25, at 7.

While the trial court simply applied the statutory law of Nigeria without question given that the parties were married in Nigeria, we note that a trial court is given discretion to whether to exercise comity, a principle in which a trial court gives "effect to laws and judicial decisions of another state out of deference and mutual respect, rather than out of duty." *Neyman v. Buckley*, 153 A.3d 1010, 1017 (Pa. Super. 2016) (quoting *Smith v. Firemens Ins. Co. of Newark, N.J.*, 590 A.2d 24, 27 (Pa. Super. 1991)). The trial court may exercise comity when "application of another state's law contradicts no

- 11 -

public policy of Pennsylvania and instead furthers a Pennsylvania policy." *Id.* (citation omitted).

The trial court properly exercised its discretion to apply the Nigerian Marriage Act, which is consistent with Pennsylvania law that provides that a marriage will be deemed void where either party at the time of marriage had an existing spouse and the former marriage had not been dissolved by divorce, annulment, or a decree of presumed death of the former spouse. 23 Pa.C.S.A. § 3304(a)(1). Given that it is undisputed that Husband and Wife were validly married in a ceremony under Nigerian statutory law, the parties' marriage would be void if Wife was married to another individual at the time of her marriage to Husband in 2011.

In similar circumstances, our courts have acknowledged competing presumptions; (1) a marriage is presumed to continue until the death of one of the parties or divorce, and (2) there is a presumption of innocence in contracting a second marriage as well as a presumption of the validity of a second marriage. *Com. ex rel. Alexander v. Alexander*, 445 Pa. 406, 410, 289 A.2d 83, 85 (1971). In light of these competing presumptions, Husband had the burden to prove the invalidity of his marriage to Wife by showing she was previously married to another individual and this marriage had not been dissolved by death or divorce at the time of the parties' marriage. *Id.* (citing *Watt's Estate*, 409 Pa. 44, 54, 185 A.2d 781 (1962)).

We agree with the trial court's finding that Husband met his heavy burden of proving that Wife married Lasisi in 2001 under both Nigerian

traditional law and Islamic law and rejecting Wife's claim that she merely participated in an "introduction ceremony." The trial court found that Lasisi credibly testified that he in fact married Wife in 2001 and presented their wedding certificate as well as photographs of the ceremony showing Wife and Lasisi dressed in clothing of the same pattern, Wife and Lasisi dressed in a second set of white attire, a cake topped with a bride and groom, an exchange of rings, Wife kneeling before Lasisi, Lasisi picking up Wife, Lasisi feeding Wife a drink, and Lasisi, Wife, and Wife's father signing a marriage document. N.T., 8/8/22, at 34-75. Lasisi testified that Wife's uncle, an imam, officiated the wedding ceremony. *Id.* at 37. The trial court also credited the testimony of Dr. Achebe, who opined that the photographs depicted a traditional customary marriage in Nigeria. N.T., 8/8/22 at 303-304.

We acknowledge that Wife vehemently claimed that the photos showed an "introduction" ceremony and not a wedding. Based on testimony at trial, the trial court found that an "introduction" ceremony occurs in the preliminary stages of a Nigerian couple's relationship in which the couple "decide their relationship is serious" and have a "small affair, usually no more than twenty people, evidenced by the family of the bridegroom visiting the family of the bride to introduce the fact that they are interested in marrying." T.C.O. at 13 (citing N.T., 8/8/22, 246-248).

While the trial court acknowledged that a Nigerian couple may have a small introduction ceremony, it credited Dr. Achebe's testimony that an

introduction ceremony would not be evidenced by a wedding cake with a bride and groom, an exchange of rings, or the presence of a religious officiant.

Further, the trial court specifically indicated that it did not find Wife's testimony nor the testimony of her witnesses to be credible on this issue. The trial court emphasized that Wife had falsely claimed that the photographs of her wedding ceremony to Lasisi were fake and had been altered and quickly retracted that argument when presented with expert testimony showing the photos were authentic. The trial court also highlighted that Wife had made legal admissions to her 2001 marriage to Lasisi in court filings in a 2018 land dispute between Wife and Lasisi.

Further, we are not persuaded by Wife's claim that Husband did not prove she married Lasisi as there are no photographs of the payment of a dowry or *sadaq* in the record. The record shows that although Lasisi admitted he had no proof that a dowry was paid to Wife's family in connection with his marriage to Wife, he confirmed that a dowry was paid. N.T., 8/8/22, at 183-85. We echo the trial court's finding that Husband presented overwhelming evidence that Wife and Lasisi married in 2001, specifically, Wife and Lasisi's marriage certificate and multiple photos depicting Lasisi and Wife participating in traditional marriage ceremony rituals.

Wife is asking us to reverse the trial court's credibility determinations which we will not do. **Bordone**, **supra**. As credibility determinations are for the finder of fact, a trial court is free to believe all, some, or none of the testimony presented. **K.B. v. Tinsley**, 208 A.3d 123, 128 (Pa. Super. 2019).

As the trial court's findings are supported by the record, the trial court did not err in finding that Wife and Lasisi married in 2001.

Wife next claims that the trial court erred in refusing to find that she could not have married Lasisi as she presented extensive evidence that she was married to a third individual, Akinsanya. Wife argued that, in addition to her own testimony, she presented a document which she alleged was her marriage certificate to Akinsanya. Wife presented the testimony of Adegbenro Omotosho-Adekunle ("Omotosho"), the secretary of the Imam who allegedly performed the 1997 wedding, to confirm the validity of Wife and Akinsanya's marriage certificate.

As noted above, the trial court emphasized that it had difficulty believing Wife's claim that she had married Akinsanya in 1997 "given the absence of any credible documentary, photographic, or witness testimony of a wedding ceremony or relationship between Wife and Akinsanya." T.C.O. at 13. Wife failed to produce a single photograph or video of the ceremony (which she claimed were stolen from her home) and could not remember the name of the photographer and videographer that she hired to document the occasion. N.T., 2/13/23, at 81-82; N.T., 2/14/23, at 43-44.

The trial court found that the wedding certificate proffered by Wife to support her marriage to Akinsanya was "highly questionable," given that it was cut off on the sides and Wife could not provide a full copy of the document. N.T., 2/13/23, at 55-56. The trial court found that Omotosho was not a credible witness in testifying that the Wife's proffered wedding certificate was

real, given that Omotosho could not access any mosque records verifying Wife's marriage to Akinsanya. Although Wife presented a letter dated February 2023 from the imam who allegedly performed the wedding ceremony stating that the marriage certificate from 1997 was valid, Omotosho indicated that he was the individual who wrote the letter. Omotosho Video Deposition, 4/5/23, at 39. The trial court also noted that Omotosho's credibility was a "difficult witness" on cross-examination in his video deposition, as he easily answered questions from Wife's counsel, but presented "sufficient difficulties answering questions from Husband's counsel." T.C.O. at 11, n.2.

Wife also takes issue with the trial court's decision to characterize her alleged marriage to Akinsanya as "fraudulent" for the purposes of U.S. immigration law. Wife claims that the trial court improperly invalidated her marriage to Akinsanya on the basis of alleged immigration fraud and asserted that the trial court had no jurisdiction to evaluate immigration issues.

Wife had testified at trial that she and Akinsanya married in 1997 before she applied for a U.S. Diversity Immigrant visa in 1999 through the lottery system. N.T., 2/13/23, at 22-22, 28, 177. After winning a DV-1 visa, Wife listed Akinsanya as her spouse so they could immigrate to the U.S. together, but the couple separated after an argument in the airport when they arrived in the U.S. on October 7, 2000, as Akinsanya wanted to live with a woman who Wife later discovered was his girlfriend. *Id.*; N.T., 2/14/23, at 40.

In rebuttal, Husband had presented the testimony of David Spaulding, Esq., an expert in immigration and marriage fraud investigation, who opined

that no marriage had took place between Wife and Akinsanya, noting there was no corroborating evidence of any relationship or a marriage ceremony in Nigeria, the couple immediately separated upon their arrival in the U.S., the couple never lived together in the U.S., and the rampant fraud that exists in the Diversity Visa lottery system with respect to Nigeria. N.T., 2/13/23, at 248-253, 257-58, 280. Atty. Spaulding also questioned the validity of the marriage certificate that Wife offered in support of her marriage to Akinsanya, given that "the photograph is cut off and it is not possible to tell if the document was *bona fide* because it did not originate from any government entity nor was it notarized by a government entity." ***Id.*** at 259-268.

In considering this testimony, the trial court did not invalidate any supposed marriage between Wife and Akinsanya based on a finding of immigration fraud or a motive to circumvent U.S. immigration laws. Rather, the trial court discussed the factual background of Wife's immigration status to bolster its finding that there was no evidence that a marriage between Wife and Akinsanya had ever occurred, "given the absence of any credible documentary, photographic, or witness testimony of a wedding ceremony or relationship between Wife and Akinsanya." Order, 1/16/25, at 13.

Moreover, we emphasize that the trial court had exclusive jurisdiction to decide such matters in this divorce action, as federal courts have traditional refrained from intervening in domestic relations disputes, recognizing a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." ***Ankenbrandt v.***

***Richards***, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). We thus find no error in the trial court's decision to reject Wife's claim of a purported marriage to Akinsanya.

Wife also raises an alternative argument, asserting that even if the trial court found that she and Lasisi entered a customary marriage and Islamic marriage in 2001, the trial court should have found that Lasisi and Wife divorced before Wife married Husband in 2011.

The trial court found that Wife's marriage to Lasisi had not been dissolved by neither traditional/customary law nor Islamic law. The parties do not dispute the trial court's finding that dissolution of a Nigerian marriage is based upon the type of marriage entered. T.C.O., at 17.

With respect to the couple's customary marriage, the trial court credited the testimony of Wife's expert, Dr. Olugasa, who testified that customary marriages must be dissolved in customary courts. N.T., 8/9/22, at 130-131. We agree with the trial court's finding that "[t]here is no credible evidence that a judgment was handed down from a Nigerian customary court dissolving the marriage of Wife and Lasisi. T.C.O. at 18. Although Lasisi testified that he hired an attorney to dissolve the parties' marriage in 2009, he subsequently realized that the attorney never properly filed for the divorce with the appropriate authorities, but gave Lasisi a "fake certificate" of divorce. N.T., 8/8/22, at 118-127. Notably, Husband presented an expert witness, Jackson Olagbaju, who found the authenticity of Lasisi's divorce decree to be highly questionable; notably, Atty. Olagbaju inquired with the Nigerian

customer court in an attempt to authentic the divorce decree and received formal response indicating the divorce decree did not originate from that court. Husband's Exhibit P-28.

With respect to Wife's Islamic marriage to Lasisi, the trial court declined to find a valid divorce occurred in 2006 when Lasisi made a verbal declaration repeating "I divorce you" three times to Wife in a meeting in Lagos, Nigeria where Wife and several of her family members were present. Based on testimony from Wife's expert witness, Dr. Achebe, the trial court found this unilateral method of divorce, triple *talaq*, recognized in Sharia law, could "only be valid if uttered by a Muslim husband." T.C.O. at 18 (citing N.T., 8/8/22, at 86, 103). Given that Lasisi did not identify as Muslim as he had converted to Christianity in 1980, the trial court found that Lasisi "could not divorce Wife in this manner." T.C.O. at 18; N.T., 8/8/22, at 28-29.

Although Wife argues that the trial court erred in relying on Dr. Achebe's representation that triple *talaq* can only be implemented by an Islamic man, she has not presented this Court with any applicable authority to question this legal principle, leaving this Court unable to assess the merits of her claim. Wife's expert witnesses did not testify at any point as to this distinction.

As Wife has not supported her argument with any applicable authority, we find this claim to be waived for lack of development.[6] **See T.K. v. A.Z.**,

_____

[6] Further, we will not disturb the trial court's finding that Wife had not shown a valid divorce from her marriage to Lasisi as the trial court was not required
*(Footnote Continued Next Page)*

157 A.3d 974, 978 (Pa. Super. 2017) (quoting **Commonwealth v. Johnson**, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citation omitted).

Wife also claims the trial court abused its discretion by failing to give reasonable weight to the testimony of Wife's witnesses while giving substantial weight to the testimony of Husband's witnesses. As we emphasized above, the trial court reiterated that it found Wife to be not credible based on "the

_____

to extend comity to recognize *talaq* as a valid, unilateral method for divorce pursuant to Sharia law. As noted above, comity gives a trial court discretion as to whether to give "effect to laws and judicial decisions of *another state* out of deference and mutual respect, rather than out of duty." **Neyman**, 153 A.3d at 1017 (emphasis added).

Nigeria has a plural legal system that combines statutory law (which is heavily influenced through English law), indigenous customary law, and Islamic religious law (Sharia). N.T., 8/9/22, at 113. Wife's own expert witnesses admitted that while several of Nigeria's northern states have implemented Islamic law, it has not been implemented in all of Nigeria or in Lagos, a southwestern state of Nigeria. Haroon Depo. at 34-39. Wife's expert witness, Judge Haroon, served as a member of the Sharia Court in Kwara state, where Islamic law has been implemented; Judge Haroon admitted admitted that Sharia law does not govern the state of Lagos. **Id.** As such, the trial court would not be engaging in comity with the applicable secular laws of Lagos, Nigeria, had it chosen to recognize *talaq* through Sharia law.

Further, courts of other U.S. states have declined to recognize *talaq* as a valid unilateral method of divorce on the grounds that it violates the right to due process, equal protection, and fundamental fairness. **See**, **e.g.**, **Aleem v. Aleem**, 947 A.2d 489, 500-502 (Md. 2008) (declining to extend comity to *talaq* divorce under Islamic religious law and secular Pakistani law as recognition of *talaq* would violate the due process, equal protection, and public policy); **Seth v. Seth**, 694 S.W.2d 459, 463–64 (Tex. App. 1985) (holding that recognition of *talaq* would be contrary to justice).

substantial record before the [trial] court." T.C.O. at 22. The trial court noted that it believed that Wife knowingly made false claims in court asserting that Husband presented fraudulent photographs, presented documents of questionable validity to bolster her case, and defrauded the U.S. government by falsely claiming Akinsanya as her husband for immigration purposes.

Moreover, the trial court also highlighted that Wife admitted to using a friend's identity to obtain employment in the U.S. in order to avoid disclosing her criminal record. Husband presented the testimony of Edward Haslem, Wife's former employer, who confirmed that Wife had given him a false identity in her employment documents. N.T., 2/14/23, at 22, 127 Haslem also indicated that Wife contacted him before trial to inform him that he did not have to comply with the subpoena to testify in this case, leading the trial court to believe Wife attempted to manipulate the testimony of her witnesses in her favor. N.T., 8/19/22, at 14-15. As noted above, we will not disturb the credibility findings of the trial court as finder of fact. *K.B.*, 208 A.3d at 128.

Wife lastly claims that the trial court's decision to credit Husband's witnesses and find her and her witnesses to be not credible can only be explained by the trial court's bias against Wife. Other than this bald assertion, Wife does not offer any analysis to support her claim of bias.

This claim is waived as Wife failed to raise any objection to the trial court's alleged bias before the trial court, but waited to do on appeal from an adverse ruling. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Further,

It is well settled that "a party may not raise the issue of judicial prejudice or bias for the first time in post[-]trial proceedings." **Ware v. U.S. Fid. & Guar. Co.,** 395 Pa. Super. 501, 577 A.2d 902, 905 (1990) (citation omitted).

On the contrary, "a party seeking recusal or disqualification on the basis of judicial bias or impartiality "[is required] to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." **In re Lokuta,** 608 Pa. 223, 11 A.3d 427, 437 (2011) (citations omitted; brackets in original), **cert. denied,** 565 U.S. 878, 132 S.Ct. 242, 181 L.Ed.2d 138 (2011). "The timeliness of such an application is particularly troubling where a party seeks disqualification only after receiving adverse judgment." **League of Women Voters of Pa. v. Commonwealth**, 645 Pa. 341, 179 A.3d 1080, 1086 (2018) (citation omitted).

**Jordan v. Pennsylvania State Univ.,** 276 A.3d 751, 762 (Pa. Super. 2022).

As a result, we decline to review this claim.

Turning to the cross-appeal, Husband takes issue with the trial court's ruling in regards to Wife's receipt of alimony *pendente lite* (APL). As noted above, Wife was awarded APL from the beginning of this litigation in 2020. Upon the entry of the trial court's January 16, 2025 order declaring the parties' marriage void *ab initio*, the trial court terminated Husband's APL obligation effective the date of the order and set Husband's APL arrears balance to zero.

Specifically, Husband argues that the trial court abused its discretion in failing to order that Husband receive a repayment of all of the APL payments made to Wife during the pendency of the divorce proceedings, given that the parties' marriage was void from its inception, and not merely voidable.[7]

_____

[7] This Court has previously explained that:

*(Footnote Continued Next Page)*

Husband asserts the trial court was required to find that "by operation of law, no economic claim (including APL) based on the declared void *ab initio* purported marriage, can exist, be sustained, or any economic benefit received therefrom be retained." Husband's Brief, at 11.

Our standard of review for an award of APL is whether the trial court abused its discretion. ***Ileiwat v. Labadi***, 233 A.3d 853, 859–60 (Pa. Super. 2020) (citation omitted). The Divorce Code defines "alimony *pendente lite*" or APL as "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. The Divorce Code provides that, "[i]n proper cases, upon petition, the court may allow a spouse reasonable [APL], spousal support and reasonable counsel fees and expenses." 23 Pa.C.S.A. § 3702. This Court has also explained that:

> APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent

_____

The distinction between a void marriage and a voidable marriage derives from the English ecclesiastical courts. A void marriage included unions so abhorrent as to be against public policy from their inception. Into this class belonged bigamous marriages and those in which one party was insane. … In contrast, voidable marriages contained some defect that could be removed by ratification []. Perlberger, *Pennsylvania Divorce Code* § 3.2 (1980).

***In Int. of Miller***, 448 A.2d 25, 30 n. 5 (Pa. Super. 1982). Section 3304 of the Divorce Code enumerates grounds for the annulment of void marriages, including "[w]here either party at the time of such marriage had an existing spouse and the former marriage had not been annulled nor had there been a divorce except where that party had obtained a decree of presumed death of the former spouse." 23 Pa.C.S.A. § 3304. Section 3305 lists the grounds for annulment of voidable marriages. ***See*** 23 Pa.C.S.A. § 3305.

spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. *APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation*.... [T]he purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding....

***Schenk v. Schenk***, 880 A.2d 633, 644–45 (Pa. Super. 2005) (citations and quotation marks omitted) (emphasis added).

We first acknowledge that Husband never argued before the trial court that his APL payments should be returned to him upon a finding in his favor. Husband did not object to the trial court's initial interim order awarding Wife APL in 2020. Husband did not object to Wife's receipt of APL in his "Counterclaim for Declaratory Judgment to Determine Marital Status" filed on October 4, 2021 in which he asked that the trial court find the parties' marriage was void *ab initio*. Importantly, Husband did not object to the trial court's subsequent October 14, 2021 order increasing Wife's APL, which was based on the parties' *stipulation* in which they agreed that Husband should pay Wife $8,000.00 APL each month with an additional $2,000.00 payment towards arrears. Further, Husband did not object to Wife's receipt of APL at any point during the parties' trial or in his post-trial submission of his proposed findings of fact and conclusions of law.

On December 19, 2024, Husband filed a motion for special relief requesting the *suspension* of the payment of APL pending the entry of the trial court's order. Husband did not request the repayment of APL in the motion

for special relief or at any other time before the trial court. As noted above, on January 16, 2025, this Court terminated Husband's APL obligation as of the date of the order and set the arrears balance to zero.

To the extent that Husband argues that he is entitled to the retroactive return of all APL payments made to Wife, he is improperly attempting to raise a collateral attack to set aside the trial court's APL orders that he never challenged upon their entry. As such, this issue is waived. Pa.R.A.P. 302.

To the extent that Husband did not waive this claim for appellate review, we cannot find the trial court abused its discretion in refusing to credit Husband for the APL payments he made to Wife in the nearly five-year period in which this matter was litigated.

As noted above, by its statutory definition, APL may be awarded "during the pendency of divorce or *annulment* proceedings." 23 Pa.C.S.A. § 3103 (emphasis added). The Divorce Code provides that the trial court has original jurisdiction of both "cases of divorce and for the annulment of void or voidable marriages" and has the authority to issue appropriate decrees or orders in various enumerated matters, including alimony *pendente lite*, "in conjunction with any decree granting a divorce or *annulment*." 23 Pa.C.S.A. § 3104(a) (emphasis added).

Section 3303, which relates to annulment of void or voidable marriages, states that "either party to the supposed or alleged marriage may bring an action in annulment to have it declared void in accordance with the procedures provided by this part and prescribed by general rules." 23 Pa.C.S.A. § 3303.

Thus, the Divorce Code's procedure allowing the trial court' APL applies to the annulment of a void marriage as applies to divorce from marriage.

Our court has found previous versions of the Divorce Code containing similar language authorized the payment of APL during the pendency of annulment actions involving bigamous marriages. *Faivre v. Faivre*, 128 A.2d 139, 142 (Pa. Super. 1956); *Stump v. Stump*, 170 A. 393 (Pa. Super. 1934); *Baker v. Baker*, 84 Pa. Super. 544 (1925). Further, the Divorce Code grants trial courts equity power and jurisdiction to issue injunctions or other orders which the trial court deems "necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require." 23 Pa.C.S.A. § 3323.

In this case, it was reasonable for the trial court to allow Wife APL during the pendency of this action given that Husband sought to nullify the parties' marriage by filing a petition in the nature of a request for a declaratory judgment to determine marital status alleging the marriage was void *ab initio* and Wife defended the request by presenting *prima facie* evidence of the validity of the marriage. *Alexander*, 445 Pa. at 410, 289 A.2d at 85 (finding that since the wife had established a *prima facie* right to support with evidence of the parties' marriage ceremony, the husband had the burden to show the marriage was invalid to defeat his support obligation).

The trial court properly exercised its discretion in awarding Wife APL "to ensure her needs were met while [the trial court] decided this matter, especially her need to meet Husband at the bar of Court with adequate

resources to litigate this matter[,]" regardless of whether the trial court might later determine the parties' marriage to be void *ab initio.* T.C.O. at 27. The APL award continued and the payments accrued until the trial court entered a final order finding the marriage void *ab initio* and definitively determined that Wife was not a lawful "spouse" entitled to support. As such, the trial court did not abuse its discretion in terminating Husband's APL obligation in its January 16, 2025 order and refraining from ordering a credit or repayment of APL.

For the foregoing reasons, we affirm the trial court's orders.

Orders affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/22/2026

- 27 -